## PROFESSIONAL SERVICES AGREEMENT
## OBSTETRICAL/GYNECOLOGY PHYSICIAN
## COVERAGE FOR THE LABOR AND DELIVERY UNIT

This PROFESSIONAL SERVICES AGREEMENT (the "Agreement") is made and entered into this _28_ day of _February_ , 20_13_ with an effective date of _3-1-13_ ("Effective Date"), by and between **Mercy Hospital Anderson d.b.a. Mercy Health – Anderson Hospital**, an Ohio nonprofit corporation ("Mercy"), and **HealthSource** ("Corporation") employer of Sherry Johnson, D.O., Jeffrey Lubow, M.D., and Casey Ogburn, M.D. (each a "Provider" and collectively "Providers").

WHEREAS, Mercy operates an acute care facility in Cincinnati, Ohio, Mercy Hospital Anderson dba Mercy Health- Anderson Hospital ("Hospital"), and is affiliated with Mercy Health Partners of Southwest Ohio d.b.a. Mercy Health ("Mercy Health"), an integrated health care network;

WHEREAS, Corporation is an Ohio corporation that employs Providers who are duly licensed to practice medicine in Ohio and are board certified in the specialty of obstetrics/gynecology ("OB/GYN");

WHEREAS, Mercy desires to retain a physician with appropriate training, skills and experience to provide OB/GYN call coverage and professional medical services for Hospital pursuant to this Agreement;

WHEREAS, Providers have the requisite training, skills and experience to provide such services;

WHEREAS, Corporation desires to provide the services of Providers to Mercy; and

WHEREAS, Mercy and Corporation agree that it is in the best interests of quality patient care and for efficient and effective delivery of health care at Mercy that this Agreement be entered into by the parties.

NOW, THEREFORE, in consideration of the agreements contained herein, the parties agree as follows:

## I.     DUTIES OF THE PROVIDER

**1.01     Provision of Provider Services.** Mercy wishes to benefit from the Providers' expertise and knowledge in the area of obstetrics/gynecology ("OB/GYN") and Corporation hereby accepts such retention by Mercy. When a Provider is scheduled by Mercy to provide Services, such Provider shall remain at Mercy during all scheduled hours. Corporation shall provide OB/GYN services to Mercy to include, but not be limited to, those services as more fully described in Exhibit A attached hereto (the "Services").

EXHIBIT
B

**Exhibit 2**

Provider may be initially scheduled periodically by Mercy for Services sometime during the hours of 6 pm to 8 am Monday through Thursday and on weekends from 6 pm Friday to 8 am on Monday and during the Holidays which shall be Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Eve, Christmas Day and New Years Day. If coverage needs change or vary in order to accommodate Mercy patient volume, additional hours or changes in these hours may be mutually agreed upon by the parties. During the hours that Provider is scheduled to provide Services to Mercy under the Agreement Corporation shall, for each shift, identify for Mercy the name of a Provider who will be available if additional physician support is required. Provider will furnish the back-up physician within the on-call response time frames as specified within the Medical Staff Bylaws, Rules and Regulations. If a Provider must continue to provide Services after 8 am (in order to address patient care issues) Provider will be paid for such time that Provider remains at Mercy providing Services, provided Provider submits to Mercy documentation of additional time spent providing Services.

Mercy may periodically assess Providers' performance of these Services. Such Services shall be performed in accordance with (i) applicable laws, rules and regulations, (ii) generally accepted industry standards, including but not limited to The Joint Commission, (iii) rules pertaining to Medicare and Medicaid, (iv) applicable rules, regulations, policies and standards of Mercy, and (iv) the Ethical and Religious Directives for Catholic Health Care Services ("the Catholic Directives") a copy of which is available at **http://www.ncbcenter.org/document.doc?id=147.**

In providing Services under this Agreement, Providers shall not discriminate among patients on the basis of race, color, national origin, religion, sex, age, disability, or other form of prohibited discrimination.

Providers shall work cooperatively with Mercy employees, members of Mercy's Medical Staff, Professional Staff and Administration in providing Services at Mercy under this Agreement.

### 1.02    Provider Qualifications.

A.    Providers shall (i) be duly licensed to practice medicine in the State of Ohio, (ii) have all necessary narcotics and controlled substances permit numbers and licenses, and (iii) have a provider number for the Medicare Program and the Ohio Medicaid Program. Providers shall be Board certified in OB/GYN, consistent with Board certification requirements in Corporation's Medical Staff Bylaws.

B.    Corporation shall immediately notify Mercy, in writing, upon learning at any time during the term of this Agreement that a Provider has had his license to practice medicine suspended or revoked, has been excluded from Medicare, or has been reprimanded, sanctioned or disciplined by any licensing or specialty board or by any state or local medical society.

C.    Upon obtaining knowledge thereof, Corporation shall immediately notify

2

Mercy, in writing, if a Provider at any time during the term of this Agreement is denied membership or reappointment of membership to the medical staff of any hospital or has clinical privileges at any Hospital suspended, curtailed or revoked.

D. Upon obtaining knowledge thereof, Corporation shall immediately notify Mercy, in writing, if any claim, demand, or suit is made against Corporation or a Provider arising out of or from the provision of Services under the terms of this Agreement.

E. Corporation shall immediately notify Mercy, in writing, if at any time during the term of this Agreement, a Provider or Corporation has a settlement or final judgment awarded against him in a medical malpractice action in an amount in excess of $25,000.

F. Providers shall obtain and/or maintain membership on Mercy's Medical Staff before providing any Services at Mercy. All applications for appointment or reappointment to the Medical Staff and for clinical privileges shall be processed in accordance with Mercy's Medical Staff Bylaws. Providers shall at all times be governed by and shall comply with the Medical Staff Bylaws and all rules, regulations and applicable policies of Mercy, including, without limitation, the Catholic Directives. Providers shall not be entitled to obtain or maintain membership on Mercy's Medical Staff simply by virtue of this Agreement.

For reasonable cause and in accordance with Mercy's Medical Staff Bylaws, Mercy may refuse to grant, or may suspend, curtail or revoke the Medical Staff membership or clinical privileges of Providers. Services provided by Corporation and Providers pursuant to this Agreement are contractual in nature, and nothing contained in the Medical Staff Bylaws or rules or regulations of Mercy, or any Mercy policies applicable to Medical Staff members in general shall give Corporation or Providers any right to compensation for said Services not included within the terms of this Agreement.

G. Providers shall work cooperatively with Mercy employees, members of Mercy's Medical Staff, Professional Staff and Administration in providing Services at Mercy under this Agreement.

**1.03 Medical Records.**

A. All medical records prepared by Providers pursuant to this Agreement are the property of Mercy and the original records may not be removed from Mercy.

B. Providers shall prepare reports in a timely and complete manner of all Services performed. All such reports shall be prepared in accordance with the policies of Mercy and the Medical Staff, the standards of the Accrediting and Licensing Agencies and the terms of any medical insurance plan or third party agreement under which Mercy is providing medical services.

C. Providers shall prepare and file any additional or supplementary reports as Mercy may reasonably request, and analyze or interpret such reports upon the request of Mercy.

3

**1.04** **Quality Programs.** Providers shall comply with, and participate in, Mercy's quality assessment/performance improvement, peer review, utilization review, outcomes assessment, risk management and education programs at the request of Mercy, including, without limitation, Mercy's Quality Performance Improvement Process, and Service Excellence Programs.

**1.05** **Billings /Compensation.** Corporation shall not bill patients or third party payors for the Services provided under this Agreement to patients of another attending physician. In addition, Corporation shall not bill patients or third party payors for the Services provided under this Agreement to a patient that presents without an attending physician unless Corporation assumes the care for that patient. Mercy shall compensate Corporation for performing the Services in the manner as described in Exhibit B attached hereto. At Mercy's request, Corporation shall submit to Mercy, on a weekly basis, Attachment I which shall also serve as Corporation's invoice for Services. Mercy shall pay each undisputed Corporation invoice (Attachment I) within thirty (30) days after receipt thereof and shall notify Corporation in writing of any disputed amounts. Corporation shall have thirty (30) days from receipt of such written notice to clarify or correct any disputed amounts.

**1.06** **Insurance.** Corporation, on behalf of itself and Providers understand and acknowledge that Corporation or Providers must personally obtain and maintain at the cost and expense of Corporation or Provider, professional liability insurance covering all professional acts of Provider in the amount of at least $1,000,000 per occurrence and $3,000,000 in the aggregate (or in any such other amount as required by the Board of Mercy). The insurance company must also be a financially secure and viable professional liability insurance carrier which has been granted an A. M. Best Company rating of B+ or above (or an equivalent rating from a recognized national rating association and/or an appropriate actuarial opinion). This insurance shall be carried at all times that each Provider is providing Services pursuant to this Agreement. Current policies, or certificates of insurance evidencing such policies, shall be given to Mercy before or at the execution of this Agreement and at each one (1) year interval, if any, following the Effective Date of this Agreement and shall be attached to this Agreement as Exhibit C.

**1.07** **Documentation.**

A. Until the expiration of seven (7) years after the furnishing of Services pursuant to this Agreement, Corporation agrees to make available, upon written request of the Ohio Department of Human Services, the Secretary of Health and Human Services, the Comptroller General, any other Licensing or Accrediting Agency, or to any of their duly authorized representatives, this Agreement, and the books, documents and records of Corporation that are necessary to certify the extent of any costs of Mercy arising from this Agreement. Further, if Corporation subcontracts any of its duties arising from this Agreement with a value or cost of $10,000 or more over a twelve-month period, with a related party, such subcontract shall contain a clause to the effect of the foregoing sentence. As used herein, "related party" includes any party employed or controlled by the Providers, any party by whom the Providers are employed or controlled by Corporation, any party by whom Corporation is

4

employed or controlled and any party with whom Corporation develops a close association or affiliation.

B.     The Corporation shall notify Mercy immediately of any request received for access to information, as described in Section 1.07A, and shall consult with Mercy regarding the response to be made thereto.

**1.08**     **Indemnification.**  Corporation and Providers hereby agrees to indemnify and save harmless Mercy, its parent, affiliates and their respective directors, officers, employees and volunteers from and against any and all claims, actions, awards, judgments, settlements, damages, liabilities and expenses of whatever nature, including attorney's fees and witness' fees, to the extent caused by the negligence or willful misconduct of Corporation or Providers or any employees or agents of Corporation, provided that such indemnification and hold harmless shall not extend to any matter to the extent caused by the negligence or willful misconduct of Mercy, its parent, affiliates or any of their respective directors, officers, employees, volunteers or independent contractors, other than Corporation or employees or agents of Corporation.

Mercy shall indemnify and save harmless Corporation and Providers or any employees or agents of Corporation, from and against any and all claims, actions, awards, judgments, settlements, damages, liabilities and expenses of whatever nature, including attorneys' fees and witness' fees, to the extent caused by the negligence of Mercy or any employees of Mercy, provided that such indemnification and hold harmless shall not extend to any matter to the extent caused by the negligence of Corporation or any employees or agents of Corporation.

Providers shall accept and be responsible for any acts or omissions in the professional practice of medicine and nothing in this Agreement shall be interpreted or construed to place any such responsibility for professional acts or omissions onto Mercy.

**1.09**     **Notice of Settlement of Claim.**  In a lawsuit where Mercy and Corporation   are defendants, Corporation agrees to use its best efforts to cooperate with Mercy in defense of such lawsuit to develop and achieve a goal for joint defense.  In such a lawsuit, Corporation agrees to give Mercy written notice of any settlement negotiations and written notice prior to accepting any settlement.

## II. DUTIES OF MERCY

**2.01**     **Space.**  Mercy shall make available for the use of Provider such space as Mercy reasonably deems necessary to enable Provider to perform Services under this Agreement. Corporation shall not use, or knowingly permit any other person who is under its direction to use, any part of Mercy's premises for any purpose other than the performance of Services for Mercy and its patients pursuant to this Agreement.

**2.02**     **Equipment and Supplies.**  Mercy shall provide such medical equipment, supplies, furniture and fixtures as Mercy reasonably deems necessary and within budgeting constraints for efficient delivery of Services as detailed in this Agreement.  Provider shall not use any part of

5

Mercy's supplies and/or equipment for any purpose other than the performance of Services for Mercy and its patients pursuant to this Agreement.

**2.03    Maintenance and Utilities.**  Mercy shall maintain and repair equipment and shall provide utilities and services such as heat, water, electricity, janitorial services, laundry and telephone services as Mercy deems reasonably necessary for efficient delivery of Services as detailed in this Agreement.

**2.04    Access to Information.**  Mercy shall provide Corporation and Provider with such information concerning patients, including information relating to medical history and insurance coverage, as shall be reasonably required by Provider to render Services under this Agreement.

## III. RELATIONSHIP OF THE PARTIES

**3.01    Independent Contractor Status.**  Corporation and Provider are performing the Services and duties required of Corporation and Provider pursuant to this Agreement as independent contractors and not as employees, partners of or joint venturers with Mercy. Corporation and Provider shall not have authority to bind or obligate Mercy in any manner. Mercy shall neither have nor exercise any control over the methods by which Provider practice medicine, except that Provider shall use currently acceptable methods in his practice and provide Services in accordance with the standards of the Accrediting and Licensing Agencies and of Mercy's Medical Staff. The sole interest of Mercy is to assure that the Services shall be provided in a competent, efficient, and satisfactory manner. Corporation shall be solely responsible for payments and withholdings arising from the Physicians performance of services under this Agreement. Corporation shall be solely responsible for compensating Provider for their performance of Services and the payment or withholding of all income taxes, Social Security taxes, unemployment taxes, and any other similar taxes imposed by any jurisdiction, workers' compensation and other insurance required by law arising from Corporation's compensation hereunder.

## IV. TERM; TERMINATION AND DISPUTE RESOLUTION

**4.01    Term.**  This Agreement shall commence on the Effective Date and shall continue in effect for a period of one (1) year and thereafter shall automatically renew each year for additional one (1) year terms, unless and until terminated in accordance with Section 4.02 hereof.

**4.02    Termination.**

A.    In the event either party, with or without cause, desires to terminate this Agreement, such party may do so by providing no less than thirty (30) days prior written notice of its intent to terminate this Agreement. In the event that the Agreement is terminated prior to its first year anniversary of the Effective Date of the Agreement, neither Corporation nor Provider and Mercy shall enter into a new agreement for the provision of the same services by Corporation or

Provider to Mercy prior to the first year anniversary of the Effective Date.

        B.    If either party breaches any term of this Agreement and fails to correct such breach within thirty (30) days after receiving written notice of such breach from the other party, such other party may terminate this Agreement by notifying the breaching party in writing of such termination.

        C.    Notwithstanding Section 4.02B above, Mercy shall have the right to immediately terminate this Agreement (i) if Provider fails to maintain membership in good standing on  Mercy's Medical Staff with appropriate clinical privileges to provide the Services required under this Agreement, (ii) if Provider's license to practice medicine in the State of Ohio or malpractice insurance is restricted, suspended or revoked, (iii) if any party to this Agreement voluntarily or involuntarily suspends, surrenders or terminates a provider number or license necessary for this Agreement; (iv) upon the permanent disability of Provider during the term of this Agreement (Provider shall be deemed to be "permanently disabled" for purposes of this Agreement when he has been unable to substantially perform the essential functions of the position under this Agreement, due to illness or accident, with or without reasonable accommodations for a period of time in excess of ninety (90) days within any one hundred eighty (180) day period.); (v) if the insurance maintained by Corporation or Provider has been or will be reduced below the minimum levels set forth in Section 1.06, or has been or will be canceled; (vi) upon the failure of Corporation or Provider to respond, to satisfaction of Mercy, to the happening of any act or failure to act by Corporation or Provider involving unethical conduct, moral turpitude or gross negligence, including without limitation any violation of the Catholic Directives or any conviction of a crime or act of dishonesty, willful disloyalty or fraud that Mercy determines is detrimental to its best interests, whether or not such act or failure to act occurred in the course of Corporation's or Provider's performance of Services under this Agreement; (vii)  if Corporation or Provider attempts to assign or otherwise transfer this Agreement without Mercy's prior written consent; (viii) if Corporation or Provider is currently or during the term of this Agreement becomes excluded from Medicare or Medicaid; (ix) if Corporation or Provider breaches any material term of this Agreement, including but not limited to the business associate section; (x) if Corporation or  Provider fails to comply with the provisions of Section 6.02.B; or (xi) if the actions of Corporation or Provider are of such a nature that they present an imminent danger to patients or materially and adversely affect the licensure, tax exemption, or accreditation status of Mercy.

        D.    Upon the termination of this Agreement, the parties shall have no further rights or obligations under this Agreement, except as otherwise provided for herein, including without limitation, under Article V hereof, and except to the extent accruing prior to the effective date of such termination.

    **4.03**   **Dispute Resolution**.  Corporation, Provider and Mercy shall in good faith first attempt to resolve any controversy, dispute or disagreement arising out of or relating to this Agreement by face-to-face negotiations by Corporation, Provider and Mercy, or their respective designees.  If any such controversy, dispute or disagreement is not resolved within thirty (30) days after such negotiations begin, that controversy, dispute or disagreement may be submitted to mediation if mutually agreed by the parties.

## V. CONFIDENTIALITY

**5.01** **Nondisclosure of Confidential Information.** Provider acknowledges his continuing obligations to hold confidential such information as described in this paragraph. In the course of this Agreement, Provider shall have access to certain information of Mercy and its affiliates which information is not generally public knowledge (the "Confidential Information"). During the term of this Agreement and thereafter, Provider shall hold all Confidential Information in the strictest of confidence as a fiduciary, and shall not, voluntarily or involuntarily, use, sell, transfer, publish, disclose, or otherwise make available to others any portion of the Confidential Information or related materials Corporation shall, and Corporation shall ensure that Provider shall, not transfer (including, but not limited to electronic transfer) or remove Confidential Information from Mercy premises without the written consent of Mercy. To the extent applicable Corporation shall, and Corporation shall ensure that Provider will abide by the Health Insurance Portability and Accountability Act. To the extent applicable Corporation shall, and Corporation shall ensure that Provider shall return to Mercy without making or retaining copies thereof, all documents, records, notebooks, computer disks or similar repositories containing Confidential Information. Mercy shall provide Provider with such information concerning patients, including information relating to medical history and insurance coverage, as shall be reasonably required by Provider to render Services under this Agreement.

**5.02** **Remedies.** Corporation acknowledges that that, notwithstanding any other provision of this Agreement, temporary and permanent injunctive relief may be sought by Mercy from any appropriate tribunals or courts and granted in any court or other tribunal proceeding to enforce paragraph 5.01 without the necessity of proof of actual damage.

## VI. MISCELLANEOUS

**6.01** **Changes in Law.** In the event of any legislative or regulatory change or determination, whether federal or state, which has or would have significant adverse impact on either Mercy or Corporation in connection with the performance of this Agreement, or in the event that performance by either Mercy or Corporation of any term, covenant, condition or provision of this Agreement should for any reason be in violation of any statute, regulation, or otherwise be deemed illegal, the affected party shall have the right to require that the other party renegotiate the terms of this Agreement, such renegotiated terms to become effective not later than fifteen (15) days after receipt of written notice of such request for negotiation. If Mercy and Corporation fail to reach an agreement satisfactory to both parties within fifteen (15) days of the request for renegotiation, the party requesting such renegotiation may terminate this Agreement upon fifteen (15) days' prior written notice to the other party or sooner if required by law.

**6.02** **Corporate Compliance/Non-Exclusion/Conviction.**
            A.       Corporation acknowledges that Mercy Health has established a Corporate Responsibility Program ("CRP") and promotes a culture that fosters prevention, detection and resolution of instances of misconduct. (See Exhibit – CHP Notice attached.)

8

Provider shall immediately notify Mercy Health' Corporate Responsibility Officer of any violation of any applicable law, regulation, third party payor requirement or breach of Mercy Health' CRP of which Provider becomes aware during the term hereof relating to this Agreement.

Provider shall cooperate with Mercy Health in responding to or resolving any complaint, investigation, inquiry, or review initiated by a governmental agency or otherwise. In connection with the foregoing, Provider shall, consistent with applicable law, fully follow the directions of Mercy Health. Provider shall sign <u>Exhibit D</u>, prior to providing Services under this Agreement.

B.     Corporation represents and warrants to Mercy that (a) neither it, nor Provider are excluded from participation in any federal health care program, as defined under 42 U.S.C. §1320a-7b (f), for the provision of items or services for which payment may be made under such federal health care programs or (b) neither it nor Provider have been recently convicted (as that term is defined under 42 U.S.C. §1320a–(7)(i)) of a criminal offense related to health care. Corporation further represents and warrants to Mercy that neither it nor Provider have arranged or contracted (by employment or otherwise) with any employee, contractor or agent that such party or its affiliates know or should know are excluded from participation in any federal health care program, to provide items or services hereunder. Corporation represents and warrants to Mercy that no final adverse action, as such term is defined under 42 U.S.C. §1320a-7e (g), has occurred or is pending or threatened against such Corporation, its Provider or its affiliates or to their knowledge against employee, contractor or agent engaged to provide items or services under this Agreement.

**6.03     Assignment; Benefit.** Corporation shall neither assign nor subcontract (except as provided herein) any portion of its obligations under this Agreement without the prior written consent of Mercy and any such assignment shall be null and void. Mercy shall be permitted to assign this Agreement to any of its affiliates. Otherwise, this Agreement shall be binding on and inure to the benefit of the parties hereto and their respective successors, assigns, executors, representatives and heirs.

**6.04     Enforceability of Remainder of Agreement.** If any term, provision, covenant, or condition of this Agreement is held by a court of competent jurisdiction to be invalid or void or unenforceable, or if Mercy in good faith concludes that any such terms, provision, covenant or condition of this Agreement would violate the Medicare and Medicaid fraud and abuse anti-kickback provisions of the Social Security Act, as amended, and regulations promulgated thereunder, then that term, provision, covenant or condition shall be reformed or rescinded as ordered by the court or to the extent Mercy in good faith believes is necessary to reasonably assure compliance. However, the remainder of this Agreement shall remain in full force and effect and shall in no way be affected.

**6.05     Notice.** All notices, demands or other writings shall be deemed sufficiently given if personally delivered or deposited in the United States mail in a properly stamped envelope,

certified or registered mail, return receipt requested, or delivered to an overnight mail service, or by facsimile delivery, call-back requested, addressed to the party to whom it is given at the addresses or numbers set forth below or such other persons or addressees or numbers as shall be given by notice of any party:

> If to Mercy to:
>
>> Mercy Health – Anderson Hospital
>> 7500 State Road
>> Cincinnati, Ohio 45255
>> Attn: President & CEO
>
> With a copy to:
>
>> Mercy Health
>> 4600 McAuley Place, 6th Floor
>> Cincinnati, Ohio 45242
>> Attn: Legal Services
>
> If to Corporation to:
>
>> HealthSource
>> 5400 DuPont Circle
>> Suite A
>> Milford, Ohio 45150

**6.06    Miscellaneous.** This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio and shall be interpreted without any construction or interpretation against the party causing the Agreement to be made. This Agreement, including its exhibits, which are incorporated herein by reference, constitutes the entire understanding between the parties concerning the subject matter hereof and supersedes any and all previous agreements between the parties relating thereto. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one agreement.    This Agreement cannot be amended or modified in any respect, unless such amendment or modification is evidenced by a written instrument executed by Mercy and Corporation. The failure by Mercy or Corporation to exercise any right provided for herein shall not be deemed a waiver of any right hereunder.  The captions of the various sections of the Agreement are not a part of the context hereof, and are inserted merely for convenience in locating the different provisions and shall be ignored in construing this Agreement. Whenever the context of this Agreement requires, words used in the singular shall be construed to mean and include the plural and vice versa, and pronouns of any gender shall be deemed to include and designate the masculine, feminine, or neuter genders.

**6.07    Agreement of Provider.** Corporation shall cause each Provider providing services under this Agreement to deliver to Mercy a written statement, substantially in the form of attached

Exhibit E. This statement shall be executed by each Provider prior to providing Services and shall state that Provider agrees to abide by the terms, conditions and obligations of Provider under this Agreement.

**6.08** **Master List.** Mercy maintains a master list of contracts that is updated centrally and available for review by the Secretary of the Department of Health and Human Services upon request. The master list is maintained in a manner that preserves the historical records of contracts. If Mercy and Providers or their immediate family members have entered into more than one arrangement that meets the requirements of the personal service arrangements exception noted in 42 C.F.R. § 411.357(d), the master list maintained by Mercy is intended to conform to the requirements of 42 C.F.R. § 411.357(d)(ii).

**IN WITNESS WHEREOF,** the parties have executed this Agreement effective as of the day, month and year first above written.

Witness _Susan Dickerson_

**Mercy:**

_____

_President/Market Leader 3/7/13_
Title

Witness _____

**Corporation:**

_____

_CEO        2/28/13_
Title

Q:\GCR\Legal\CONTRACT.PHYS\HealthSource Anderson DB House Physician 2012.doc

**EXHIBIT A**

**Description of Services**

The Provider, as House Officer ("HO") will see any patient at the request of a Mercy Family Birth Center RN without an MD order. All MD's providing HO coverage will be NCC Certified within one year of being credentialed.* Provider shall:

a.  Determine the need for emergency/urgent delivery, either vaginal or cesarean section.

b.  Initiate emergency cesarean section for fetal distress when the safety and well-being of the mother and/or baby is at risk regardless of the ETA of the patient's attending physician/CNM; assist in cesarean, as requested.

c.  Perform vaginal delivery in case of imminent delivery when attending physician/certified nurse midwife is not present.

d.  Place cervical ripening agents to prepare for labor.  Insertion of prostaglandin for induction of labor, as requested.

e.  Perform, interpret and document antepartum ultrasound exams, non-stress tests, and oxytocin challenge tests (when attending physician/certified nurse midwife is not available).

f.  Perform history and physical for obstetrical patients as requested including pre-surgical and antenatal admissions. Evaluate post-surgical patients in post-surgical cases.

g.  Perform amniotomies as requested.

h.  Place internal monitoring devices as needed.

i.  Determine the presence of ruptured membranes by use of Fern Test or other modalities such as ultrasound.

j.  At the request of the patient's attending physician or attending ED physician, evaluate patients in the Emergency Department.

k.  Fully comply with EMTALA requirements if transfer of a woman in labor is necessary.

l.  Provide formal hand off (Verbal Report) from one Physician to the next regarding all Triage/L&D Patients at change of shift, or when going off duty.

m. Participate in briefing with On-Coming HO, Off-Going HO and Clinical Coordinator/ Charge Nurse regarding Triage/L&D Patients to provide formal hand-off.

n. Participate in Debriefs and Huddles as requested by the Clinical Coordinator/Charge Nurse/RN/MD/CNM.

o. Comply with all Family Birth Center Policy and Procedures.

p. See any patient in Triage in accordance with Mercy's "Care of the Maternity Triage Patient" Policy.

q. Assure that patients defined as high risk [below] are examined by their attending physician upon admission and minimally every 8 to 16 hours. The patient may be seen more often depending upon the condition and the judgment of the attending. If the attending is unable to examine his/her patients within the time frame noted, the attending should request that the HO examine and document the status of that patient.

r. Conference with Clinical Coordinator/Charge Nurse once per shift for concurrent quality review of high risk patients.

s. The definition of a high risk patient for purposes of this Agreement includes but is not limited to:

- Preterm labor < 34 weeks
- Preterm Premature rupture of membranes
- Pre-eclampsia being treated with Magnesium Sulfate
- Insulin Dependent Diabetic Patients
- Intrauterine Growth Restriction
- Suspected Macrosomia Fetus
- Known Neonatal Congenital Anomaly
- Placenta Previa
- Prior maternal history of Eclampsia/Abruption
- Prior maternal history of Abruption
- VBAC Patients
- Fetal Tracings with:
  - Absent Variability
  - Prolonged/Late Decelerations
  - Recurrent Decelerations
  - Unrelieved Tachysystole
- Unrelieved Pain

t.  Communicate directly with attending MD/CNM any clinical updates or status changes after seeing patient.

u.  Prescribe medication for postpartum patients.  May provide any prescription upon request of the attending physician/certified nurse midwife.

v.  Perform post-op evaluation on obstetrical/gynecological patients at the request of the attending MD, RN, or in cases of an emergent postpartum event, such as a postpartum hemorrhage.

w.  Document all examinations, observations, and procedures performed, and call the patient's attending physician /certified nurse midwife with patient update.

x.  Actively participate in the care of patients when notified by an RN/MD/CNM of a situation which is felt to be placing the safety and well-being of the mother and/or baby at risk, regardless of the communication status or ETA of the patient's attending MD/CNM.

   *Residents practicing as HO are excluded

14

**EXHIBIT B**

**Provider's Compensation**

Mercy shall compensate Corporation at the rate of $100.00 per hour, except that on Holidays, which shall be Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Eve, Christmas Day, and New Years Day, Mercy will compensate Corporation at a Holiday rate of $150.00 per hour.

**EXHIBIT C**

**Insurance Certificates**

See Attached

**EXHIBIT D**

**Compliance Certification**

I hereby certify that I am a duly authorized officer of the independent contractor named below ("**Corporation**"). On behalf of the Corporation and its officers, directors, employees and agents, I certify that:

1. I have received and read the Corporate Responsibility Program Manual of Mercy Health (the "**CRP Manual**") and understand the material requirements set forth in that document.

2. To Corporation's and its employees' actual knowledge, Corporation and its employees and agents have acted and shall continue to act in material accordance with the provisions of the CRP Manual.

**Name of Corporation**: HealthSource

**Name of Corporation Officer**:_____

**Signature**:_____

Date:_____

JAN 2 9 2013

HEALTHSOURCE OF OHIO
CENTRAL OFFICE

**EXHIBIT E**

**Physician Certificate**

January , 2012

Mercy Health – Anderson Hospital
7500 State Road
Cincinnati, Ohio 45255
Attn: Jeffrey Graham, President & CEO

      Re:   Provider Agreement

Dear Jeff:

     Pursuant to Section 6.07 of Professional Services Agreement, effective as of
_____, 2012, by and between HealthSource and Mercy Hospital Anderson d.b.a. Mercy Health – Anderson Hospital, I hereby agree to abide by all the terms and conditions applicable to, and obligations of a Provider under such Agreement.

        Sincerely,

        [signature]
        Sherry Johnson

18

JAN 2 5 1913

HEALTHSOURCE OF OHIO
CENTRAL OFFICE

**EXHIBIT E**

**Physician Certificate**

January 24 , 2012

Mercy Health – Anderson Hospital
7500 State Road
Cincinnati, Ohio 45255
Attn: Jeffrey Graham, President & CEO

   Re: Provider Agreement

Dear Jeff:

   Pursuant to Section 6.07 of Professional Services Agreement, effective as of
_____, 2012, by and between HealthSource and Mercy Hospital Anderson d.b.a. Mercy
Health – Anderson Hospital, I hereby agree to abide by all the terms and conditions applicable to,
and obligations of a Provider under such Agreement.

        Sincerely,

        [signature] Casey Cajon

18

JAN 2 9 2013

HEALTHSOURCE OF OHIO
CENTRAL OFFICE

**EXHIBIT E**

**Physician Certificate**

_____, 2012

Mercy Health – Anderson Hospital
7500 State Road
Cincinnati, Ohio 45255
Attn: Jeffrey Graham, President & CEO

      Re:    Provider Agreement

Dear Jeff:

      Pursuant to Section 6.07 of Professional Services Agreement, effective as of _____, 2012, by and between HealthSource and Mercy Hospital Anderson d.b.a. Mercy Health – Anderson Hospital, I hereby agree to abide by all the terms and conditions applicable to, and obligations of a Provider under such Agreement.

                 Sincerely,

                 [signature]

                 Jeff Lubow

18

<b><u>EXHIBIT – CHP Notice</u></b>

<b>Notice to Agents, Vendors and Contractors</b>

Catholic Healthcare Partners (CHP) has created a Corporate Responsibility Program to ensure we comply with all laws and regulations that apply to a tax-exempt, church-based health care provider. This includes laws concerning health and safety, Medicare and Medicaid, fraud and abuse, tax, anti-trust, environmental and labor laws, among others.

We cultivate a culture of compliance from the Board Rooms to front-line care-givers, and we include our credentialed providers, vendors and contractors in that commitment. We commit to an effective Corporate Responsibility Program to sustain that culture. Our program includes education, communications methods to encourage reports of concerns, investigations into concerns, monitoring and auditing for compliance and accuracy, and accountability and corrective action when we detect an error.

Vendors and contractors must be aware of, and agree to abide by, the following three provisions of our Corporate Responsibility Program as a continuing condition to do business with us:

**Eligibility to Do Business with a Catholic Healthcare Partners Entity**

1. As a Medicare-participating organization, CHP is prohibited from hiring or doing business with any entity or person who has been:
   A. Excluded from participating in federal or state health programs by the Office of Inspector General of the U.S. Department of Health and Human Services;
   B. Barred from contracting with the U.S. Government by the General Services Administration; or
   C. Listed as a Terrorist Organization or supporting individual by the Office of Foreign Asset Control of the U.S. Department of the Treasury.
2. Vendors must certify their eligibility to do business with CHP by certifying that neither the organization, nor its owners or principals or any vendor employee (collectively, "staff,") who will provide services to CHP is prohibited from doing business with CHP under paragraph 1. Vendor agrees to provide to CHP the names, addresses and SSNs of key vendor staff, if requested, for CHP to complete required name checks.
3. Eligibility is a continuing condition of any contract with CHP and vendors must agree to notify CHP immediately if the government takes adverse action in paragraph 1 against the vendor or any of its staff. Vendors must also notify CHP if they learn of an investigation that could reasonably result in adverse action in paragraph 1 against the vendor or its staff. CHP may terminate a contract where the government takes adverse action listed in paragraph 1 against the vendor or its staff.

**Business Ethics, Gifts and Gratuities**

4. CHP does business in an open, fair, impartial and transparent manner and engages in arms-length negotiations with potential vendors, contractors or business partners. CHP requires

2

our employed associates, credentialed providers, board members and volunteers to act in the best interests of CHP at all times. This includes avoiding conflicts of interest that might jeopardize the impartiality of their judgment and decision-making, as well as avoiding situations that create a reasonable appearance of a conflict of interest or an appearance of favoritism, partiality, personal gain or insider-dealing.

5. CHP associates may not seek, request or accept any gift, gratuity or other item, regardless of value, that is intended to influence a business decision, or that is offered to them because of their position in a pending business decision. CHP associates may not accept gifts, gratuities, discounts or other things of value from anyone doing business with, or desiring to do business with, CHP or any CHP entity, except in nominal amounts, which they must disclose to their reporting superior.

6. The Corporate Responsibility Program includes Corporate Responsibility Officers (CRO) who can assist or respond to any vendor concern about possible violations of CHP's policies or applicable laws or regulations. Associates are required, and vendors are encouraged, to report any concerns to either the CRO at 513-639-2833 or to CHP's ReportLine, which is available 24/7/365 and where anonymous reports can be made, at 1-888-302-9224. CHP policy prohibits retaliation for a report made in good faith.

## Required Education on the False Claims Act and Whistleblower Protections for Providers of Medicaid-covered Services

Because CHP and its entities receive in excess of $5 million in annual Medicaid reimbursements, we are required to provide additional education to our employed associates, vendors and contractors related to the False Claims Act and whistleblower protections available under those laws. Our vendors and contractors are required to ensure that their employees who will provide services to CHP receive the following educational information also:

CHP associates work hard to ensure that we create accurate and truthful patient bills and submit accurate claims for payment from any payer, including Medicare and Medicaid, commercial insurance, or our patients. It's the right thing to do, reflects our faith-based mission and complies with federal and state laws that require accuracy in health care billing.

The federal False Claims Act (31 USC 3729-33) makes it a crime for any person or organization to knowingly make a false record or file a false claim with the government for payment. "Knowing" can include deliberate or reckless ignorance of facts that make the claim false.

Examples of possible False Claims include someone knowingly billing Medicare for services that were not provided, or for services that were not ordered by a physician, or for services that were provided at sub-standard quality where the government would not pay.

A person who knows a False Claim was filed for payment can file a lawsuit in Federal Court on behalf of the government and, in some cases, receive a reward for bringing original information about a violation to the government's attention. Penalties for violating the federal False Claims Act can be up to three times the value of the False Claim, plus from $5,500 to $11,000 in fines, per claim. While Ohio law does not permit private suits like the federal False Claims Act for

Medicaid fraud, Ohio law does include both civil or criminal penalties against those who attempt to obtain Medicaid payments to which they are not entitled, or who commit Medicaid fraud (See Ohio Revised Code Sections 5111.03 and 2913.40).

The False Claims Act protects anyone who files a False Claim lawsuit from being fired, demoted, threatened or harassed by his or her employer for filing the suit. If a court finds that the employer retaliated, the court can order the employer to re-hire the employee, and to pay the employee twice the amount of back pay that is owed, plus interest and attorney's fees. Ohio law provides equivalent protections from retaliation by an employer for employees who report Medicaid fraud to the authorities (See Ohio Revised Code Section 4113.52(B)).

CHP's Corporate Responsibility Program supports compliance with the False Claims Act by:
- Monitoring and auditing business activities to prevent or detect errors in coding or billing.
- Educating our associates, vendors and contractors that they are responsible to report any concern about a possible False Claim at a CHP facility via our 3-Step Reporting Process.
- Investigating all reported concerns and correcting any billing errors discovered.
- Protecting our associates, vendors or contractors from adverse action when they do the right thing and report any genuine concern via the 3-Step Reporting Process. CHP will investigate any allegation of retaliation against an associate for speaking up.

4

**FIRST AMENDMENT**
**TO**
**PROFESSIONAL SERVICES AGREEMENT**
**OBSTETRICAL/GYNECOLOGY PHYSICIAN**
**COVERAGE FOR THE LABOR AND DELIVERY UNIT**

**THIS FIRST AMENDMENT**, effective as of August 21, 2013 (the "Effective Date") is the First Amendment to the Professional Services Agreement Obstetrical/Gynecology Physician Coverage for the Labor and Delivery Unit by and between **Mercy Hospital Anderson d.b.a. Mercy Health – Anderson Hospital**, an Ohio nonprofit corporation ("Mercy"), and **HealthSource** ("Corporation") employer of Sherry Johnson, D.O., Jeffrey Lubow, M.D., and Casey Ogburn, M.D. (each a "Provider" and collectively "Providers") effective March 1, 2013 (the "Agreement").

The Agreement is hereby amended as follows:

1. The term "Provider" is hereby amended to include Robert Barnhorn, M.D. effective August 21, 2013 and Timothy Thress, M.D effective September 6, 2013.

2. Physician Certificates for Dr. Barnhorn and Dr. Thress are attached to this Amendment and are included as additions to the existing Exhibit E Physician Certificates.

3. All other provisions set forth in the Agreement referenced above shall remain unchanged and continue in force and effect.

The parties have executed this First Amendment as of the day and year below written.

**Mercy:**

Title     _Vice President medical Affairs_

Date     _10/29/13_

**Corporation:**

Title _CEO     Health Source of Ohio_

Date     _10/21/13_

**EXHIBIT E**

**Physician Certificate**

10 | 21 , 2013

Mercy Health – Anderson Hospital
7500 State Road
Cincinnati, Ohio 45255
Attn: Jeffrey Graham, Market Leader & President

      Re:    Provider Agreement

Dear Jeff:

      Pursuant to Section 6.07 of Professional Services Agreement, effective as of February 28, 2013, by and between HealthSource and Mercy Hospital Anderson d.b.a. Mercy Health – Anderson Hospital, I hereby agree to abide by all the terms and conditions applicable to, and obligations of a Provider under such Agreement.

                  Sincerely,

                  Timothy Thress, M.D.

D:\Documents and Settings\kimp\Local Settings\Temporary Internet Files\Content.Outlook\V4L3ORNM\Health Source First Amendment 2013 Add Barnhorn  Thress.doc

3

**EXHIBIT E**

**Physician Certificate**

10 | 21        , 2013

Mercy Health – Anderson Hospital
7500 State Road
Cincinnati, Ohio 45255
Attn: Jeffrey Graham, Market Leader & President

       Re:     Provider Agreement

Dear Jeff:

       Pursuant to Section 6.07 of Professional Services Agreement, effective as of February 28, 2013, by and between HealthSource and Mercy Hospital Anderson d.b.a. Mercy Health – Anderson Hospital, I hereby agree to abide by all the terms and conditions applicable to, and obligations of a Provider under such Agreement.

                     Sincerely,

                     Robert Barnhorn, M.D.

D:\Documents and Settings\kimp\Local Settings\Temporary Internet Files\Content.Outlook\V4L3ORNM\Health Source First Amendment 2013 Add Barnhorn  Thress.doc

2



**HealthSource**
of Ohio

5400 Dupont Circle, Suite A
Milford, Ohio 45150
(513) 576-7700

October 22, 2013

*10.30 - 1 copy sent to*
*Healthsource*
*Jennifer*
*Fund*

Ms. Jasmine M. Rausch, MSN, RNC-OB, C-EFM
Clinical Director, Perinatal and Perioperative Services
Mercy Health-Anderson Hospital
7500 State Road
Cincinnati, OH 45255

*10.30*

Re:     **First Amendment to Professional Services Agreement, Obstetrical/Gynecology Physician**
        **Coverage for the Labor and Delivery Unit**
        **Robert Barnhorn, M.D. and Timothy Thress, M.D.**

Dear Ms. Rausch:

Enclosed are the original signed Physician Certificates for Drs. Barnhorn and Thress along with two
originals of the First Amendment. Please return one First Amendment original after it has been
executed by Mercy Hospital.

Please do not hesitate to contact me if there are any questions. Thank you for your help in the process.

Yours truly,

Kimberly M. Patton /sek

Kimberly Patton
President & CEO

KP:sek

Enclosures

*"How Health Care Should Be"*

Batavia Family Practice & Ob/Gyn | Eastgate Pediatrics | Georgetown Pediatrics | Goshen Family Practice
Greenfield Family Practice | Hillsboro Health Center | Mt. Orab | New Richmond Family Practice | Ripley
Seaman | Washington Court House Family Practice | Wilmington | Western Brown School Based Health Center

**SECOND AMENDMENT**
**TO**
**PROFESSIONAL SERVICES AGREEMENT**
**OBSTETRICAL/GYNECOLOGY PHYSICIAN**
**COVERAGE FOR THE LABOR AND DELIVERY UNIT**

**THIS SECOND AMENDMENT**, effective as of __1/17__, 2014 (the "Effective Date") is the Second Amendment to the Professional Services Agreement Obstetrical/Gynecology Physician Coverage for the Labor and Delivery Unit by and between **Mercy Hospital Anderson d.b.a. Mercy Health – Anderson Hospital**, an Ohio nonprofit corporation ("Mercy"), and **HealthSource** ("Corporation") employer of Sherry Johnson, D.O., Jeffrey Lubow, M.D., Casey Ogburn, M.D., Robert Barnhorn, M.D. and Timothy Thress, M.D. (each a "Provider" and collectively "Providers") effective March 1, 2013 and amended by a First Amendment effective August 21, 2013 (altogether the "Agreement").

The Agreement is hereby amended by adding Martin Luther King Day to the Holidays listed in the Agreement as follows:

1. The second paragraph of Section 1.01 is deleted in its entirety and replaced with the following:

    Provider may be initially scheduled periodically by Mercy for Services sometime during the hours of 6 pm to 8 am Monday through Thursday and on weekends from 6 pm Friday to 8 am on Monday and during the Holidays which shall be Martin Luther King Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Eve, Christmas Day and New Years Day. If coverage needs change or vary in order to accommodate Mercy patient volume, additional hours or changes in these hours may be mutually agreed upon by the parties. During the hours that Provider is scheduled to provide Services to Mercy under the Agreement Corporation shall, for each shift, identify for Mercy the name of a Provider who will be available if additional physician support is required. Provider will furnish the back-up physician within the on-call response time frames as specified within the Medical Staff Bylaws, Rules and Regulations. If a Provider must continue to provide Services after 8 am (in order to address patient care issues) Provider will be paid for such time that Provider remains at Mercy providing Services, provided Provider submits to Mercy documentation of additional time spent providing Services.

2. The existing Exhibit B is deleted in its entirety and replaced with the attached Revised Exhibit B.

3. All other provisions set forth in the Agreement referenced above shall remain unchanged and continue in force and effect.

**(REMAINDER OF PAGE INTENTIONALLY LEFT BLANK)**

The parties have executed this Second Amendment as of the day and year below written.

**Mercy:**

Title _President / East Market_

Date _1/17/14_

**Corporation:**

Title _CEO_

Date _1/17/14_

<u>**EXHIBIT B**</u>

### <u>Provider's Compensation</u>

Mercy shall compensate Corporation at the rate of $100.00 per hour, except that on Holidays, which shall be Martin Luther King Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Eve, Christmas Day, and New Years Day, Mercy will compensate Corporation at a Holiday rate of $150.00 per hour.

### THIRD AMENDMENT
### TO
### PROFESSIONAL SERVICES AGREEMENT
### OBSTETRICAL/GYNECOLOGY PHYSICIAN
### COVERAGE FOR THE LABOR AND DELIVERY UNIT

**THIS THIRD AMENDMENT,** effective as of June _9_ , 2016 (the "Third Amendment Effective Date") is the Third Amendment to the Professional Services Agreement Obstetrical/Gynecology Physician Coverage for the Labor and Delivery Unit by and between **Mercy Health – Anderson Hospital LLC f/k/a Mercy Hospital Anderson,** an Ohio limited liability company ("Mercy"), and **HealthSource** ("Corporation") employer of Sherry Johnson, D.O., Jeffrey Lubow, M.D., Casey Ogburn, M.D., Robert Barnhorn, M.D. and Timothy Thress, M.D. (each a "Provider" and collectively "Providers") effective March 1, 2013, as amended by a First Amendment effective August 21, 2013 and a Second Amendment effective (altogether the "Agreement").

1. The term "Provider" is hereby amended to delete Robert Barnhorn, M.D. as a Provider and include Dr. Tifany Nolan, M.D. as a Provider effective June _9_ , 2016.

2. A Physician Certificate for Dr. Nolan is attached to this Amendment and is included as an addition to the Existing **Exhibit E** Physician Certificates.

3. The Agreement is hereby amended by removing Martin Luther King Day from the Holidays listed in the Agreement and replacing with Easter Day as follows:

   The second paragraph of Section 1.01 is deleted in its entirety and replaced with the following:

   Provider may be initially scheduled periodically by Mercy for Services sometime during the hours of 6 pm to 8 am Monday through Thursday and on weekends from 6 pm Friday to 8 am on Monday and during the Holidays which shall be Easter Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Eve, Christmas Day and New Years Day. If coverage needs change or vary in order to accommodate Mercy patient volume, additional hours or changes in these hours may be mutually agreed upon by the parties. During the hours that Provider is scheduled to provide Services to Mercy under the Agreement Corporation shall, for each shift, identify for Mercy the name of a Provider who will be available if additional physician support is required. Provider will furnish the back-up physician within the on-call response time frames as specified within the Medical Staff Bylaws, Rules and Regulations. If a Provider must continue to provide Services after 8 am (in order to address patient care issues) Provider will be paid for such time that Provider remains at Mercy providing Services, provided Provider submits to Mercy documentation of additional time spent providing Services.

4. The existing **Exhibit B** is deleted in its entirety and replaced with the attached Revised **Exhibit B**.

5. All other provisions set forth in the Agreement referenced above shall remain unchanged and continue in force and effect.

**\*\*\* Remainder of Page Blank/Signature Page Follows \*\*\***

The parties have executed this Third Amendment as of the day and year below written.

**Mercy Health – Anderson Hospital LLC:**

Title _President / CEO Mercy Health East_

Date _6/21/16_

**HealthSource:**

Title _President & CEO_

Date _7/7/16_

### Provider's Compensation

Mercy shall compensate Corporation at the rate of $100.00 per hour, except that on Holidays, which shall be Easter Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Eve, Christmas Day, and New Years Day, Mercy will compensate Corporation at a Holiday rate of $150.00 per hour.

<u>**EXHIBIT E**</u>

<u>**Physician Certificate**</u>

_Jun 9_ , 2016

Mercy Health – Anderson Hospital
7500 State Road
Cincinnati, Ohio 45255
Attn: Jeffrey Graham, President

        Re:    <u>Provider Agreement</u>

Dear Jeff:

        Pursuant to Section 6.07 of Professional Services Agreement, effective as of February 28, 2013, by and between HealthSource and Mercy Health – Anderson Hospital LLC, I hereby agree to abide by all the terms and conditions applicable to, and obligations of a Provider under such Agreement.

        Sincerely,

        Tifany Nolan, M.D.


**MERCYHEALTH**

February 10, 2016

HealthSource
5400 Dupont Circle, Suite A
Milford, Ohio 45150

Re: *OB Night House Coverage Agreement – Revised Holidays*

To Whom It May Concern:

The purpose of this letter is to document the change in the definition of "Holidays" under the Anderson Hospital OB Night House Officer Agreement between HealthSource as employer of Sherry Johnson, D.O., Timothy Thress, M.D., Jeffrey Lubow, M.D. and Casey Ogburn, M.D. and Mercy Health – Anderson Hospital, for which a Holiday premium rate is paid, as described in Sections 1.01 and Exhibit B. Commencing calendar year 2016, Holidays shall no longer include Martin Luther King Day and shall include Easter. Please sign to below to acknowledge your agreement.

Sincerely,

Jeffrey Graham
President & CEO

Cc: Jasmine Rausch

Accepted:

Physician Signature

2/24/16

Date

Q:\GCR\Legal\CONTRACT\PHYS\HealthSource Holiday Change MHA for Johnson Thress Lubow Ogburn.docx

1