# EVANS REPORTING

Coast-To-Coast Coverage • Unsurpassed Excellence

Kimberly Patton

December 21, 2021

N.B., A Minor (Dwan Bray and Aaron Bray)

vs.

Bon Secours Mercy Health, Inc., et al

Page 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


N.B., A MINOR, BY HER PARENTS,
NATURAL GUARDIANS, AND NEXT
FRIENDS DWAN BRAY AND AARON BRAY,

        Plaintiff,

   vs.                    Case No. 1:20-CV-699

BON SECOURS MERCY HEALTH,
INC., et al.,

        Defendants.


~~~~~~~~~~~~~~~~~~~~



Remote Deposition of
KIMBERLY PATTON



Tuesday, December 21, 2021
2:00 p.m.



Stephanie R. Dean, RPR

```
 1    REMOTE APPEARANCES:
 2       On behalf of the Plaintiff:
             MYLES J. POSTER, ESQ.
 3           Wais, Vogelstein, Forman & Offutt, LLC
             1829 Reisterstown Road, Suite 425
 4           Baltimore, MD 21208
             410.998.3600
 5           myles@malpracticeteam.com
 6       On behalf of Defendant United States of America:
             MARGARET CASTRO, ESQ.
 7           U.S. Department of Justice
             U.S. Attorney's Office
 8           Southern District of Ohio
             221 E. 4th Street, Suite 400
 9           Cincinnati, OH  45202
             margaret.castro@usdoj.gov
10
         On behalf of Defendant United States of America:
11           SEAN FLAIM, ESQ.
             330 C NW, Suite 2100
12           Washington, DC 20201
             sean.flaim@hhs.gov
13
         On behalf of Defendants Bon Secours Mercy
14       Health, Inc., Mercy Health - Anderson Hospital,
         LLC; and Lisa Toft, R.N.:
15           BRIAN D. GOLDWASSER, ESQ.
             Rendigs, Fry, Kiely & Dennis, LLP
16           600 Vine Street, Suite 2650
             Cincinnati, OH  45202
17           bgoldwasser@rendigs.com
18       On behalf of Defendants Brown County Women's
         Health, Inc., Brown County Women's Health, LLC,
19       and Barbara Patridge, M.D.:
             DAVID C. CALDERHEAD, ESQ.
20           Calderhead, Lockemeyer & Peschke
             6281 Tri-Ridge Boulevard, Suite 210
21           Loveland, OH  45140
             dcalderhead@clp-law.com
22
         On behalf of the State of Ohio Department of
23       Medicaid:
             PAMELA POPP, ESQ.
24           HealthSource of Ohio
             150 E. Gay Street, 21st Floor
25           Columbus, OH 43215
```

```
 1                    I N D E X

 2              EXAMINATION OF KIMBERLY PATTON

 3    BY MR. POSTER                             4

 4                      EXHIBITS

 5    Deposition Exhibit 1                      7

 6    Deposition Exhibit 2                      15

 7    Deposition Exhibit 3                      19

 8    Deposition Exhibit 4                      35

 9                    - - - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 4

1      KIMBERLY PATTON, of lawful age, called for

2    examination, being by me first duly sworn, as

3    hereinafter certified, deposed and said as follows:

4                EXAMINATION OF KIMBERLY PATTON

5    BY MR. POSTER:

6         Q.    Good afternoon, Ms. Patton.  How are you?

7         A.    I'm good.  How are you?

8         Q.    Pretty well.  Thank you.  My name is Myles

9    Poster and I represent the Plaintiffs in a lawsuit

10   that's been filed in Hamilton County and then since

11   been removed to federal court in the Southern

12   District of Ohio.  I'm here to take your deposition

13   today.  Is that your understanding as well?

14        A.    Yes.

15        Q.    Have you ever given a deposition before?

16        A.    I have.

17        Q.    When was the last time you gave a

18   deposition?

19        A.    It's probably been 15 years ago.

20        Q.    So appreciating that you've gone through

21   the process before and it's been some time, what

22   I'd like to do is just spend a couple minutes going

23   through some basic ground rules with you so that

24   you and I are communicating effectively and

25   efficiently this afternoon, especially since we're

1    doing the deposition via Zoom.  So as you saw,

2    there's a court reporter here who is taking down

3    everything that I say and everything that you say,

4    so for the benefit of the court reporter, and to

5    help ensure an accurate record in the case in the

6    deposition today, I would ask that you provide

7    verbal responses to my questions.  Yeses, noes, an

8    explanation if necessary.  Do your very best to

9    avoid nonverbal cues like "uh-huh," head shakes,

10   things like that which are often hard for the court

11   reporter to take down to create an accurate record,

12   okay?

13        A.   Yes.

14        Q.   At some point during this afternoon's

15   deposition, it may delve into a somewhat

16   conversational tone where you might anticipate

17   where I'm going with my questions and feel the need

18   to kind of jump in before I'm done asking my

19   question, or I may similarly start asking you

20   another question before you're done answering.  I

21   will do my very best not to, but, again, for the

22   benefit of the court reporter, if you could please

23   allow me to finish asking my question before you

24   start answering, I will do my very best not to ask

25   you another question before you're done answering

1    the current question, okay?

2      A.   Understood.

3      Q.   At some point this afternoon I may ask you

4    a question that is poorly worded or frankly doesn't

5    make any sense.  In the event that that happens,

6    please let me know and just say, "Myles, I do not

7    understand the question," and I will do my very

8    best to rephrase in a manner in which you do

9    understand, okay?

10      A.   Yes.

11      Q.   In the event that you do not ask me to

12    clarify a question, I'm going to assume that you

13    understood it as phrased and you've answered it to

14    the best of your ability; is that fair?

15      A.   Yes.

16      Q.   I don't envision us being particularly

17    long this afternoon, but in the event that you need

18    to take a break, please just let me know and I'm

19    happy to accommodate that.  I just ask that if

20    we've got a question pending that we finish that

21    question and answer before we take a break, okay?

22      A.   Yes.

23      Q.   What I'd like to do is show you the Notice

24    of Deposition that brought us together this

25    afternoon.

1     A.   Okay.

2     Q.   We'll mark this as Deposition Exhibit 1.

3   (Thereupon, Deposition Exhibit 1 was marked for

4   purposes of identification.)

5     Q.   Can you see this?

6     A.   I can.

7     Q.   Have you seen this document prior to

8   today's deposition?

9     A.   Yes.

10     Q.   And did you have the opportunity to review

11   it in its entirety, which is five pages in length,

12   prior to today's deposition?

13     A.   Yes.

14     Q.   And you understand that you are here as a

15   representative on behalf of HealthSource of Ohio to

16   give a deposition in this case, correct?

17     A.   Correct.

18     Q.   And you understand that as a

19   representative of Health Source of Ohio your

20   testimony today is binding on HealthSource of Ohio,

21   correct?

22     A.   I understand.

23     Q.   And in the Notice of Deposition that we've

24   marked as Exhibit Number 1, there are five areas of

25   inquiry.  Did you have the opportunity to fairly

1  prepare and review the information or documents in

2  connection with those areas of inquiry to testify

3  this afternoon?

4      A.   Yes.

5      Q.   Did you bring anything with you to today's

6  deposition?

7      A.   I brought the deposition that you have

8  that you just showed.  I also have a contract.

9      Q.   And what contract is that?

10     A.   Let me get it.  The contract --

11  Professional Service Agreement for obstetrical and

12  gynecological physician coverage for labor and

13  delivery unit.

14     Q.   That's between HealthSource of Ohio and

15  Mercy Health Anderson Hospital, correct?

16     A.   That's correct.

17     Q.   How many pages in length is the contract

18  that you have with you?

19     A.   Six.  Six.  Let me count again.  I'm

20  sorry, seven, front and back.

21     Q.   Are there page numbers in the bottom

22  middle of that document?

23     A.   17.

24     Q.   Thank you.  Other than the Notice of

25  Deposition and the Professional Services Agreement,

1   are there any other documents you brought with you

2   to today's deposition?

3       A.   I'm looking.  I have something -- I have

4   the HRSA, Notice of Deeming Action.

5       Q.   Other than the HRSA Notice of Deeming

6   Action and the two other documents I just

7   mentioned, is there anything else you brought with

8   you specifically for today's deposition?

9       A.   No.

10      Q.   I neglected to ask this question at the

11  outset of the deposition, but can you give me your

12  full name and current business address, please?

13      A.   Sure.  It's Kimberly Patton, P-A-T-T-O-N.

14  The address is 424 Wards Corner Road, I guess

15  that's Loveland, Ohio.  45 -- I don't know the zip.

16  45150 maybe.

17      Q.   And what business or office is located at

18  the 4224 Wards Corner address?

19      A.   HealthSource of Ohio.

20      Q.   Can you tell me what you reviewed in

21  preparation for today's deposition, Ms. Patton,

22  please?

23      A.   I reviewed the documents we just

24  discussed.

25      Q.   Anything else other than the three

Page 10

1    documents you mentioned a couple moments ago?

2        A.    No.

3        Q.    You're currently employed by HealthSource

4    of Ohio, correct, Ms. Patton?

5        A.    Yes.

6        Q.    In what capacity are you currently

7    employed?

8        A.    I'm president and CEO.

9        Q.    How long have you been employed as the

10   president and CEO of HealthSource of Ohio?

11       A.    Nineteen years.

12       Q.    Can you describe for me generally what

13   your role as president and CEO of HealthSource of

14   Ohio entails?

15       A.    I am the chief executive officer for all

16   of the operations of the company.

17       Q.    And in your role as president of

18   HealthSource of Ohio, can you describe for me

19   generally what that role entails?

20       A.    It's actually the same.  President and CEO

21   are the same.

22       Q.    And HealthSource of Ohio is a federally

23   qualified health center, correct?

24       A.    That's correct.

25       Q.    What is your understanding of what a

1  **federally qualified health center is or does?**

2      A.   A federally qualified health center is an

3  entity with a 330 grant through the federal

4  government, and it provides primary care to people

5  who are either uninsured, underinsured or in need

6  of care in a community.

7      **Q.   And in your role as president and CEO of**

8  **HealthSource of Ohio, what role, if any, do you**

9  **play in the application process for federal grants**

10  **pursuant to Section 330?**

11      A.   I supervise the vice president that is in

12  charge of grants, I also will overlook the

13  application prior to submission.

14      **Q.   And who is -- as of 2014 into 2015, who**

15  **would have been the vice president in charge of**

16  **grants at HealthSource of Ohio?**

17      A.   Lisa Jackson.

18      **Q.   Is Ms. Jackson still with HealthSource of**

19  **Ohio?**

20      A.   Yes.

21      **Q.   And as of 2014 and 2015, were you actively**

22  **involved in the preparation of the grant**

23  **application on behalf of HealthSource of Ohio or**

24  **would you overlook or review a draft before it was**

25  **submitted to the Department of Health and Human**

1    Resources?

2        A.    I would overlook the draft.

3        Q.    So in terms of the contents of the grant

4    application, that information is input or would

5    have been input by Ms. Jackson, correct?

6        A.    Correct.

7        Q.    Do you know how often grant applications

8    are submitted to the Department of Health and Human

9    Services on behalf of HealthSource of Ohio?

10       A.    Can you clarify which grant you are asking

11   for?

12       Q.    As you understand it, how many grants --

13   how many federal grants does HealthSource of Ohio

14   receive?

15       A.    We receive our 330 grant that is applied

16   for annually.

17       Q.    And the 330 grant, what time of year is

18   that application submitted to the Department of

19   Health and Human Services?

20       A.    Either August or September.

21       Q.    Do you have any understanding, as part of

22   Ms. Jackson's preparation of the 330 grants that

23   are submitted on behalf of HealthSource of Ohio,

24   where that information that is input into the grant

25   application comes from?

Page 13

1    A.    The input for the grant application comes

2    from internal sources within HealthSource and they

3    are electronic health records or our EPM system or

4    quality metrics, also our financials.

5    **Q.    You said electronic health record, EPM,**

6    **quality metrics and financials.  Anything else?**

7    A.    No.  That's the majority.

8    **Q.    What does EPM stand for?**

9    A.    EPM is the practice management side of the

10   house, electronic practice management.

11   **Q.    And why do you review the grant**

12   **application -- the 330 grant application before**

13   **it's submitted to Health and Human Services?**

14   A.    It's my responsibility to oversee that

15   grant process before submission to HRSA.

16   **Q.    From your perspective as chief executive**

17   **officer and president of HealthSource of Ohio, the**

18   **goal is to ensure that the information in that**

19   **grant application that is submitted to HRSA is**

20   **accurate, correct?**

21   A.    Correct.

22   **Q.    And as of 2015 or 2014 into 2015, what was**

23   **Ms. Jackson's formal title at HealthSource of Ohio?**

24   A.    Vice president of marketing and

25   development.

Page 14

1    Q.    In the event that you had any suggestions

2  or changes to a draft 330 grant application that

3  Ms. Jackson would prepare, how would you go about

4  advising her of any proposed changes?

5    A.    We would discuss them.

6    Q.    Via email or in person?

7    A.    In person.

8    Q.    In terms of the service sites that would

9  be incorporated into any 330 grant application that

10  would be submitted to HRSA on behalf of

11  HealthSource of Ohio, do you have any understanding

12  as to where Ms. Jackson would obtain that service

13  site information from?

14    A.    Let me think about that a second.  Our

15  sites from previous years' grants, and any new

16  additional sites that we have deemed since the last

17  grant would be included.

18    Q.    So is it fair to say that every year that

19  a 330 grant application is submitted, it includes

20  prior service sites as well as any potential new

21  service sites that are added for that year that the

22  grant would be in effect?

23    A.    Yes, unless there has been a discontinued

24  site.

25    Q.    So it would be either an -- the addition

Page 15

1    of a new site or the removal of an old site

2    potentially.

3        A.    Correct.

4        Q.    I would like to show you what we will mark

5    as Deposition Exhibit Number 2.

6    (Thereupon, Deposition Exhibit 2 was marked for

7    purposes of identification.)

8        Q.    Can you see my screen?

9        A.    I can.

10       Q.    And this document is listed as a Notice of

11   Award Authorization.  Do you see that in the top

12   right-hand corner?

13       A.    Yes.

14       Q.    And have you seen this document prior to

15   today's deposition?

16       A.    I have seen these documents.  I can't tell

17   you that I have seen this particular document

18   recently.

19       Q.    And what's your understanding generally of

20   what this document is?

21       A.    This document is the Notice of Grant Award

22   for the 330 grant with the details and the

23   requirements.

24       Q.    And in this document the budget period

25   line item 7 is from January 1, 2015 through

Page 16

1    **January 31, 2015, correct?**

2        A.    The project period is January 1 -- are you

3    looking at the project period according to this

4    document?

5        Q.    **The budget period.**

6        A.    The budget period.  I apologize.  Yes,

7    1-1-15 to 12-31-15.

8        Q.    **So this would be -- understanding you may**

9    **not have seen this specific document in preparation**

10   **for today, but you have a general familiarity with**

11   **the document, this would be the authorization --**

12   **the award authorization for fiscal year 2015 based**

13   **on an application -- a 330 grant application that**

14   **would have been submitted in August or September of**

15   **2014 for the following year, correct?**

16       A.    That's correct.

17       Q.    **And the grantee name and line item in**

18   **number 1 is HealthSource of Ohio, correct?**

19       A.    Correct.

20       Q.    **In looking at what's labeled USAA00046,**

21   **there are terms and conditions contained in this**

22   **Notice of Award Authorization, correct?**

23       A.    Correct.

24       Q.    **And the goal of -- strike that.**

25             **As a 330 grant recipient, the expectation**

1    is of HealthSource of Ohio that these terms and

2    conditions will be satisfied, correct?

3        A.    Correct.

4        Q.    And looking under the terms and

5    conditions, the third full paragraph lists,

6    "Federal grant funds may not be used to pay the

7    salary of an individual in a rate in excess of

8    federal executive level II of the federal executive

9    pay scale currently $180,500."

10           Did I read that correctly, Ms. Patton?

11       A.    You did.

12       Q.    Do you know who Dr. Timothy Thress is,

13   Ms. Patton?

14       A.    I do.

15       Q.    And who do you know Dr. Thress to be?

16       A.    He was employed by us as an OB-GYN

17   physician.

18       Q.    Do you know for how long Dr. Thress was

19   employed at HealthSource?

20       A.    I'm sorry, I don't.

21       Q.    How long has -- strike that.

22           Is Dr. Thress still an obstetrician with

23   HealthSource of Ohio?

24       A.    He is not.

25       Q.    Do you have any understanding as to the

1    circumstances or why he left HealthSource of Ohio?

2        A.    I don't have those details.  I'm sorry.

3        Q.    Did you have the opportunity to review

4    Diane Miller's deposition in preparation for

5    today's deposition?

6        A.    I have not talked or spoken with Diane

7    Miller of her deposition.

8        Q.    Did you review the written transcript of

9    her testimony in this case in preparation?

10       A.    I did not.

11       Q.    As I understand it, from Ms. Miller's

12   testimony, the 330 grant money that HealthSource of

13   Ohio receives is used to pay the salaries of

14   physicians at HealthSource of Ohio.  Is that your

15   understanding as well?

16       A.    It is, up to the federal limit that you

17   just referenced.

18       Q.    And when you say "up to the federal

19   limit," that would mean that would be the

20   physician's base salary up to that threshold of

21   $181,500, correct?

22       A.    That is correct.

23       Q.    Do you have any understanding as to what

24   Dr. Thress' salary was as of 2015?

25       A.    I do not.

Page 19

1      Q.    To the extent that Dr. Thress' base salary

2   was in excess of $181,500, that would be

3   inconsistent with the terms and conditions of the

4   federal grant -- the 330 federal grant, correct?

5      A.    No.  Dr. Thress' salary can be paid up to

6   $181,000 from federal grant dollars.  His salary

7   and compensation may be paid at market rate and

8   paid for by other revenues within HealthSource.

9      Q.    Understood.  So anything in excess of

10  $181,500 would be coming from other sources outside

11  federal grant money, correct?

12     A.    That is correct.

13     Q.    What I'd like to do next is show you what

14  we'll mark as Deposition Exhibit Number 3.

15  (Thereupon, Deposition Exhibit 3 was marked for

16  purposes of identification.)

17     Q.    Can you see the screen, Ms. Patton?

18     A.    I can, but not very clearly.

19     Q.    I'll represent to you, Ms. Patton, that

20  this is an excerpt of the 330 grant application

21  that was submitted on behalf of HealthSource of

22  Ohio in September of 2014.  Did you review any

23  grant applications in preparation for today's

24  deposition similar to what we're looking at now?

25     A.    I did not.

Page 20

1      Q.    Are you generally familiar with the format

2    of the 330 grant application?

3      A.    I am.

4      Q.    And I'll take you kind of page by page and

5    not ask you questions yet, but is this in a format

6    consistent with what you've seen in the past or

7    reviewed as the work product of Ms. Jackson before

8    finalizing and submitting to HRSA relative to that

9    330 grant application?

10     A.    Yes.

11     Q.    And if we look at, beginning on the fifth

12   page of this PDF, Form 5B lists the service sites

13   where HealthSource of Ohio is providing care and

14   treatment to underserved, uninsured or those in

15   need in the medical community, correct?

16     A.    That is correct.

17     Q.    And as part of the 330 federal grant

18   application process, the goal is to lay out in the

19   application for HRSA in the Department of Health

20   and Human Services how the proceeds from any grant

21   will be used to provide care and treatment to the

22   underserved, uninsured or those in need in the

23   medical community, correct?

24     A.    Correct.

25     Q.    Including detailing any service sites

1  where physicians may be providing care and

2  treatment to those patients as well, correct?

3      A.    Correct.

4      Q.    Looking at the service sites under 5B,

5  what's your understanding as to those service sites

6  that are listed generally in subsection Form 5B?

7      A.    They are service sites of HealthSource of

8  Ohio that are in scope according to the federal

9  definition.

10     Q.    What do you mean by "in scope according to

11 the federal definition"?

12     A.    To open a site, you have to apply for that

13 site to be what they call in scope, I have to give

14 it scope to be a site for HealthSource, so it is a

15 HealthSource site that is in scope.

16     Q.    And are the sites listed in 5B owned and

17 operated by HealthSource of Ohio?

18     A.    They are -- yes, those practices are owned

19 and operated by HealthSource of Ohio.

20     Q.    So Mount Orab is a HealthSource of Ohio

21 facility?

22     A.    Correct.

23     Q.    And Georgetown Pediatrics as well?

24     A.    Yes.

25     Q.    And Ripley, is that a HealthSource of Ohio

Page 22

1    site?

2         A.    It is.

3         Q.    And HealthSource of Ohio, Inc., is that a

4    service site?

5         A.    It is our administrative site.

6         Q.    And HealthSource Mount Washington, is that

7    a service site as well?

8         A.    Yes.

9         Q.    And Washington Courthouse, is that a

10   service site?

11        A.    Yes.

12        Q.    Is New Richmond Family Practice a service

13   site, HealthSource of Ohio?

14        A.    Yes.

15        Q.    Anderson OB-GYN, is that a service site of

16   HealthSource of Ohio?

17        A.    Yes.

18        Q.    Hillsboro Health Center, is that a service

19   site of HealthSource of Ohio?

20        A.    Yes.

21        Q.    And Mount Orab Elementary Middle SBHC, is

22   that a service site of HealthSource of Ohio?

23        A.    Yes.

24        Q.    Mount Orab is listed again, correct?

25        A.    Yes.

Page 23

1    Q.    And then Eastgate Pediatrics, is that a

2  service site of HealthSource of Ohio?

3    A.    Yes.

4    Q.    SBHC Hamersville Elementary Middle School,

5  is that a service site of HealthSource of Ohio?

6    A.    Yes.

7    Q.    HealthSource of Ohio as of 2014, 2015 was

8  owning and operating a school?

9    A.    We were owning and operating a

10  school-based health center.

11    Q.    And then Goshen Family Practice, is that a

12  HealthSource of Ohio service site?

13    A.    Yes.

14    Q.    And then Batavia Family Practice OB-GYN,

15  is that a service site of HealthSource of Ohio?

16    A.    Yes.

17    Q.    HealthSource Lebanon, was that a service

18  site of HealthSource of Ohio?

19    A.    Yes.

20    Q.    Appalachian Hope Van, was that a

21  HealthSource of Ohio service site?

22    A.    Yes.

23    Q.    And HealthSource Batavia Pharmacy, was

24  that a HealthSource of Ohio service site?

25    A.    Yes.

Page 24

1    Q.    Seaman and HealthSource Wilmington are two

2    additional service sites, correct?

3    A.    Yes.

4    Q.    Is Mercy Health Anderson Hospital

5    identified in subsection 5B as a service site of

6    HealthSource of Ohio?

7    A.    It is not by definition of HRSA.

8    Q.    Meaning that HealthSource of Ohio is

9    not -- strike that.

10    Meaning that Mercy Anderson Hospital is

11    not within scope pursuant to the federal definition

12    that you mentioned earlier in the deposition,

13    correct?

14    A.    It means that being in scope as an

15    operational site for a qualified health center, and

16    hospitals are not in that definition.

17    Q.    So shifting back to Exhibit Number 3,

18    looking at Form 5C, that lists "Other Activities

19    and Locations," Ms. Patton?

20    A.    If you could make it larger, that would be

21    helpful.

22    Q.    A little easier to see.

23    A.    Thank you.

24    Q.    So re-asking that question, Form 5C

25    identifies "Other Activities or Locations" as the

1    header of that section, correct?

2       A.    That's correct.

3       Q.    What's your understanding as part of the

4    application process for a 330 grant where the

5    information included in Other Activities or

6    Locations comes from?

7       A.    It comes from our other activities that

8    our clinical staff participate in that do not meet

9    the definition of Form 5A or Form 5B.

10       Q.    And in the left-hand margin of Exhibit 3,

11    under "Activity and Location Information," it

12    identifies the "Type of Activity," "Frequency of

13    Activity," "Description of Activity" and "Types of

14    Locations Where Activity is Conducted," correct?

15       A.    Correct.

16       Q.    And there's eight different types of other

17    activities or locations listed under Form 5C,

18    correct?

19       A.    Yes.  It went a little fast, but I'll take

20    your count as correct.

21       Q.    We can go line by line.  "Hospital

22    admitting" is one form of other activity or

23    location, correct?

24       A.    Yes.

25       Q.    "Home visits" is another form of activity

Page 26

1    or location, correct?

2         A.   Correct.

3         Q.   "County fair screening days" is another

4    activity or location, correct?

5         A.   Yes.

6         Q.   "Medical rounds" is another activity or

7    location, correct?

8         A.   Correct.

9         Q.   "Sports team coverage" is another activity

10   or location, correct?

11        A.   Yes.

12        Q.   "Health fairs" is another activity or

13   location as well, correct?

14        A.   Yes.

15        Q.   And "Nursing home" and "Kindergarten

16   sports physicals" are two additional activities or

17   locations, correct?

18        A.   Correct.  Correct.

19        Q.   In the eight examples that we just went

20   through, Ms. Patton, do you see "House officer"

21   being listed as the type of activity?

22        A.   It is not listed specifically.

23        Q.   Do you see "Physician call coverage" being

24   listed as a type of activity in the eight examples

25   we just went through?

1    A.    "Call coverage" is not listed because it

2  is a contract requirement for physicians to cover.

3  It is under "Hospital admitting" and it is also

4  under "Rounds."

5    **Q.    But not specifically listed in the**

6  **application that's submitted to HRSA for a 330**

7  **federal grant, correct?**

8    A.    Correct.

9    **Q.    And Mercy Health Anderson Hospital is not**

10  **listed as a specific location under "Other**

11  **Activities or Locations" in Form 5C of this grant**

12  **application, correct?**

13    A.    Correct.

14    **Q.    As of 2015, were you aware of a**

15  **Professional Services Agreement between**

16  **HealthSource of Ohio and Mercy Health Anderson**

17  **Hospital?**

18    A.    Yes.

19    **Q.    Do you know when that agreement was first**

20  **entered into?**

21    A.    I do not, off the top of my head.

22    **Q.    Was there a signature page on the**

23  **Professional Services Agreement that you have in**

24  **front of you?**

25    A.    I believe so.  Let me look.  Yes.

1    Q.   And what page are you referring to in

2  particular?

3    A.   Page 11.

4    Q.   And on page 11, is that your signature

5  listed under the "Corporation" heading, the second

6  signature on the right-hand column?

7    A.   Yes.

8    Q.   And what's the date of that signature?

9    A.   2-28-13.

10    Q.   Does that refresh your recollection to any

11  extent, Ms. Patton, as to when this agreement would

12  have been entered between HealthSource of Ohio and

13  Mercy Health Anderson Hospital?

14    A.   Yes, according to this document.

15    Q.   And that would have been in -- the first

16  quarter of 2013 approximately, correct?

17    A.   Correct.

18    Q.   Do you have any understanding as to how

19  this agreement first came into existence?

20    A.   It was an agreement that Mercy and

21  HealthSource engaged in for OB coverage to protect

22  patient care.

23    Q.   Do you have any recollection or any

24  understanding as to whether Mercy Health Anderson

25  Hospital approached HealthSource of Ohio or

Page 29

1    HealthSource approached Mercy regarding the

2    implementation or initial negotiations of this

3    agreement?

4        A.    I don't remember.

5        Q.    Other than patient safety, do you have any

6    understanding as to why this agreement was entered

7    into between HealthSource of Ohio and Mercy

8    Anderson Hospital?

9        A.    It was entered into for the coverage of

10   the hospital floor for patient coverage because

11   Mercy Anderson does not have an OB-GYN residency

12   program to cover the hospital, the OB-GYN floor.

13       Q.    Do you have any understanding as to who on

14   behalf of HealthSource participated in the

15   formulation or negotiation of this Professional

16   Services Agreement?

17       A.    It was myself.

18       Q.    And this agreement called for house

19   officer services that various obstetricians would

20   provide to Mercy Health Anderson Hospital, correct?

21       A.    That is correct.

22       Q.    So in terms of the description of services

23   listed on page 12, 13 and 14 of that agreement --

24   do you have pages 12, 13, 14 of that agreement?

25       A.    I do.

1      Q.    And in the top right-hand corner it lists

2   Exhibit A, correct?

3      A.    It does.

4      Q.    And then in the middle there's a heading

5   that says, "Description of Services" and the first

6   two sentences read:   The provider as house officer

7   will see any patient at the request of a Mercy

8   Family person or RN without an MV order.   All M.D.s

9   providing house officer coverage will be NCC

10  certified within one year of being credentialed."

11  And then the third sentence saying, "Provider

12  shall" and there's A through X, different items

13  enumerated, correct?

14     A.    Correct.

15     Q.    And you participated in the development of

16  the description of services as part of the

17  formulation of the Professional Services Agreement?

18     A.    I was aware of the description of services

19  and they were -- I would tell you that I am not

20  qualified to negotiate some of these in that this

21  is a very detailed description for an OB-GYN

22  service, but I am aware of what these services

23  require.

24     Q.    And these were services that Mercy Health

25  Anderson Hospital required of the obstetricians in

1    providing house officer services to labor and

2    delivery patients at the hospital consistent with

3    this agreement, correct?

4        A.    That is correct.

5        Q.    And ultimately Dr. Thress was one of the

6    house officers that provided care and treatment to

7    patients at Mercy Health Anderson pursuant to this

8    Professional Services Agreement, correct?

9        A.    Correct.

10       Q.    Do you have any recollection as to when

11   Dr. Thress first started working at HealthSource of

12   Ohio?

13       A.    I do not.

14       Q.    What's your understanding as to how the

15   physicians that provided health services to Mercy

16   Anderson were compensated for those services?

17       A.    They were compensated for the services --

18   because the contract was with HealthSource,

19   HealthSource was compensated for the services, and

20   we in turn compensated the physician.

21       Q.    Do you have any understanding as to why

22   Mercy Health Anderson Hospital didn't directly

23   compensate the physicians versus the money or

24   compensation passing through HealthSource first

25   before being remitted to the physicians?

Page 32

1    A.    Because for us, in our physician contract,

2  the physicians are required to take call and

3  they're also required to provide hospital services

4  as part of their employment agreement, and so it

5  was set up so that the contract was between us, as

6  HealthSource, and Mercy.

7    **Q.    Do you know what the breakdown was in**

8  **terms of the compensation that the provider made**

9  **off of the services as a house officer versus what**

10 **amount of money that HealthSource of Ohio would**

11 **receive as compensation for the house officer**

12 **services provided to Mercy Anderson?**

13   A.    The agreement is that HealthSource

14 receives 20 percent and the physician who had done

15 the house officer work would receive 80 percent.

16   **Q.    So of the 100 percent that's originating**

17 **from Mercy Health Anderson Hospital and being paid**

18 **directly to HealthSource, 80 percent of that goes**

19 **directly to the physician, correct?**

20   A.    That is correct.

21   **Q.    And the remaining 20 percent goes to**

22 **HealthSource of Ohio?**

23   A.    That is correct.

24   **Q.    And that money that's received as part --**

25 **strike that.**

1          The money received as part of the

2    Professional Services Agreement in the house

3    officer services that physicians like Dr. Thress

4    provided at Mercy Health Anderson Hospital, that

5    was not 330 grant money, correct?

6        A.   No, that was not 330 grant money.

7        Q.   That's money coming from a private

8    hospital system, correct?

9        A.   It is money coming from the contract to

10   cover the OB-GYN services.

11       Q.   But money paid by a private entity,

12   correct?

13       A.   Yes.

14       Q.   So understanding that Mercy is paying

15   HealthSource and then HealthSource is remitting

16   80 percent of any compensation that that provider

17   has earned as part of their house officer services,

18   that money is really originating from Mercy Health

19   Anderson, correct?

20       A.   Yes.

21            MR. POSTER:  Can we take a quick

22   five-minute break, please?

23                  (Recess taken.)

24       Q.   Ms. Patton, I just want to shift your

25   attention back to Exhibit 3 and some of the other

1    activities that we were talking about under

2    Subsection 5C.

3        A.    Okay.

4        Q.    If we assume that this 330 grant

5    application was submitted in September of 2014 --

6    can you make that assumption with me, Ms. Patton?

7        A.    Yes.

8        Q.    That would have been after the

9    implementation of the Professional Services

10   Agreement with Mercy Anderson Hospital and

11   HealthSource of Ohio for obstetrical call coverage,

12   correct?

13       A.    Yes.

14       Q.    And the formulation of that Professional

15   Services Agreement specifically identifying

16   obstetricians at HealthSource of Ohio as house

17   officers, correct?

18       A.    Yes, according to that they would be under

19   this contract, that's correct.

20       Q.    Understanding that that contract was in

21   existence before the submission of this 330 grant

22   application laying out other activities and

23   locations, why wouldn't Mercy Health Anderson

24   Hospital for house officer be specifically listed

25   as a type of activity in this document that's

Page 35

1  submitted to HRSA and the Department of Health and

2  Human Services?

3      A.   I would tell you that it's under "Hospital

4  Admitting" and there was another one, "Hospital

5  Rounding."

6      Q.   My question is:  Why specifically was it

7  not listed as a type of activity?

8      A.   I can't tell you why it wasn't

9  specifically listed.

10      Q.   But you would have known of the existence

11  of the Professional Services Agreement and going

12  over this 330 grant application and finalizing it

13  before its submission to HRSA, correct?

14      A.   Yes, I would have signed it.

15      Q.   Do you recall signing a declaration in

16  this case, Ms. Patton, relative to Dr. Thress'

17  employment at HealthSource of Ohio?

18      A.   I don't -- I don't remember signing

19  specifically a document for Dr. Thress, or any of

20  the other clinicians, for that matter.

21  (Thereupon, Deposition Exhibit 4 was marked for

22  purposes of identification.)

23      Q.   I just want to show you what I've marked

24  as Deposition Exhibit Number 4 and see if this

25  refreshes your memory.  Have you seen this

1    declaration before, Ms. Patton?

2        A.    I obviously signed it, but I don't recall

3    it very clearly, though.

4        Q.    Do you have any recollection of preparing

5    this document yourself?

6        A.    No.

7        Q.    Do you know if you prepared this document?

8        A.    I don't prepare my own documents, so, no,

9    I would have not prepared this document.

10       Q.    Looking at paragraph 4, it says, "To the

11   best of my knowledge, Timothy J. Thress, M.D. was

12   not billing Dwan Bray/Ny Leah Bray privately, nor

13   was he receiving monetary compensation for the

14   services provided to Dwan Bray NB from any

15   third-party payers, including Medicaid or any other

16   source other than the regular compensation received

17   from HealthSource of Ohio."

18             Did I read that correctly, Ms. Patton?

19       A.    You did.

20       Q.    So, based on -- what's your understanding

21   as to -- strike that.  Without divulging anything

22   that Ms. Popp or Ms. Castro has told you in

23   confidence relative to the representation of

24   HealthSource or Dr. Thress in this case, do you

25   have any understanding of the involvement of

Page 37

1    Dr. Thress in any care and treatment that he may

2    have provided to the Plaintiffs in this case?

3         A.   I do not.

4         Q.   So based on what we established just a few

5    minutes ago before we took our break, the money

6    that Dr. Thress was making as a house officer for

7    the care and treatment he was providing to patients

8    at Mercy Health Anderson pursuant to that

9    Professional Services Agreement, that money

10   originated from the hospital, correct?

11        A.   That's correct.

12        Q.   And it passed through HealthSource of Ohio

13   and was divided into two pots, 20 percent that went

14   to HealthSource and 80 percent that went to

15   Dr. Thress, correct?

16        A.   Correct.

17        Q.   So understanding that that money was

18   originating from another source, Dr. Thress was

19   making compensation from a source outside of

20   HealthSource of Ohio, correct?

21        A.   Correct, exactly as it's stated here.

22        Q.   So the money would come from an outside

23   source, Mercy Health Anderson, come to

24   HealthSource, and then be distributed to

25   Dr. Thress, correct?

1    A.    Correct.

2         MR. POSTER:  I think that's all the

3  questions that I have for you, Ms. Patton.  Thank

4  you very much for your time.

5         THE WITNESS:  Thank you.

6         MS. CASTRO:  We'll waive signature.

7         THE REPORTER:  Can you put your orders on

8  the record?

9         MR. POSTER:  I will take an etran with the

10  exhibits appended, please.

11         (Deposition concluded at 3:05 p.m.)

12                     - - - - -

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 39

1              C E R T I F I C A T E
2
   STATE OF OHIO,    )
3                    )  SS:
   WAYNE COUNTY,     )
4
       I, Stephanie R. Dean, a Court Reporter and
5  Notary Public within and for the State of Ohio,
   duly commissioned and qualified, do hereby certify
6  that the within-named witness, KIMBERLY PATTON, was
   by me first duly sworn to testify the truth, the
7  whole truth and nothing but the truth in the cause
   aforesaid; that the testimony then given by her was
8  by me reduced to Stenotype in the presence of said
   witness, afterwards prepared and produced by means
9  of Computer-Aided Transcription and that the
   foregoing is a true and correct transcription of
10 the testimony so given by her as aforesaid.
       I do further certify that this deposition was
11 taken remotely at the time and place in the
   foregoing caption specified, and was completed
12 without adjournment.
       I do further certify that I am not a relative,
13 employee of or attorney for any party or counsel,
   or otherwise financially interested in this action.
14     I do further certify that I am not, nor is the
   court reporting firm with which I am affiliated,
15 under a contract as defined in Civil Rule 28(D).
       IN WITNESS WHEREOF, I have hereunto set my hand
16 and affixed my seal of office at Doylestown, Ohio
   on this 31st day of December, 2021.
17
18
19
20
21     _____
                Stephanie R. Dean
22
       My commission expires August 30, 2025.
23               - - -
24
25

**A**

**AARON** 1:4
**ability** 6:14
**accommodate** 6:19
**accurate** 5:5,11
 13:20
**action** 9:4,6 39:13
**actively** 11:21
**activities** 24:18,25
 25:5,7,17 26:16
 27:11 34:1,22
**activity** 25:11,12,13
 25:13,14,22,25
 26:4,6,9,12,21,24
 34:25 35:7
**added** 14:21
**addition** 14:25
**additional** 14:16
 24:2 26:16
**address** 9:12,14,18
**adjournment** 39:12
**administrative** 22:5
**admitting** 25:22 27:3
 35:4
**advising** 14:4
**affiliated** 39:14
**affixed** 39:16
**aforesaid** 39:7,10
**afternoon** 4:6,25 6:3
 6:17,25 8:3
**afternoon's** 5:14
**age** 4:1
**ago** 4:19 10:1 37:5
**agreement** 8:11,25
 27:15,19,23 28:11
 28:19,20 29:3,6,16
 29:18,23,24 30:17
 31:3,8 32:4,13 33:2
 34:10,15 35:11
 37:9
**al** 1:8
**allow** 5:23
**America** 2:6,10
**amount** 32:10
**Anderson** 2:14 8:15

22:15 24:4,10 27:9
 27:16 28:13,24
 29:8,11,20 30:25
 31:7,16,22 32:12
 32:17 33:4,19
 34:10,23 37:8,23
**annually** 12:16
**answer** 6:21
**answered** 6:13
**answering** 5:20,24
 5:25
**anticipate** 5:16
**apologize** 16:6
**Appalachian** 23:20
**APPEARANCES**
 2:1
**appended** 38:10
**application** 11:9,13
 11:23 12:4,18,25
 13:1,12,12,19 14:2
 14:9,19 16:13,13
 19:20 20:2,9,18,19
 25:4 27:6,12 34:5
 34:22 35:12
**applications** 12:7
 19:23
**applied** 12:15
**apply** 21:12
**appreciating** 4:20
**approached** 28:25
 29:1
**approximately** 28:16
**areas** 7:24 8:2
**asking** 5:18,19,23
 12:10
**assume** 6:12 34:4
**assumption** 34:6
**attention** 33:25
**attorney** 39:13
**Attorney's** 2:7
**August** 12:20 16:14
 39:22
**authorization** 15:11
 16:11,12,22
**avoid** 5:9

**award** 15:11,21
 16:12,22
**aware** 27:14 30:18
 30:22

**B**

**back** 8:20 24:17
 33:25
**Baltimore** 2:4
**Barbara** 2:19
**base** 18:20 19:1
**based** 16:12 36:20
 37:4
**basic** 4:23
**Batavia** 23:14,23
**beginning** 20:11
**behalf** 2:2,6,10,13,18
 2:22 7:15 11:23
 12:9,23 14:10
 19:21 29:14
**believe** 27:25
**benefit** 5:4,22
**best** 5:8,21,24 6:8,14
 36:11
**bgoldwasser@ren...**
 2:17
**billing** 36:12
**binding** 7:20
**Bon** 1:7 2:13
**bottom** 8:21
**Boulevard** 2:20
**Bray** 1:4,4 36:12,14
**Bray/Ny** 36:12
**break** 6:18,21 33:22
 37:5
**breakdown** 32:7
**BRIAN** 2:15
**bring** 8:5
**brought** 6:24 8:7 9:1
 9:7
**Brown** 2:18,18
**budget** 15:24 16:5,6
**business** 9:12,17

**C**

**C** 2:11,19 39:1,1

**Calderhead** 2:19,20
**call** 21:13 26:23 27:1
 32:2 34:11
**called** 4:1 29:18
**capacity** 10:6
**caption** 39:11
**care** 11:4,6 20:13,21
 21:1 28:22 31:6
 37:1,7
**case** 1:6 5:5 7:16
 18:9 35:16 36:24
 37:2
**Castro** 2:6 36:22
 38:6
**cause** 39:7
**center** 10:23 11:1,2
 22:18 23:10 24:15
**CEO** 10:8,10,13,20
 11:7
**certified** 4:3 30:10
**certify** 39:5,10,12,14
**changes** 14:2,4
**charge** 11:12,15
**chief** 10:15 13:16
**Cincinnati** 2:9,16
**circumstances** 18:1
**Civil** 39:15
**clarify** 6:12 12:10
**clearly** 19:18 36:3
**clinical** 25:8
**clinicians** 35:20
**Columbus** 2:25
**column** 28:6
**come** 37:22,23
**comes** 12:25 13:1
 25:6,7
**coming** 19:10 33:7,9
**commission** 39:22
**commissioned** 39:5
**communicating** 4:24
**community** 11:6
 20:15,23
**company** 10:16
**compensate** 31:23
**compensated** 31:16

Coast to coast coverage
Unsurpassed excellence

Evans Reporting Service
800-256-8410

Over 25 years
award-winning service

31:17,19,20
**compensation** 19:7
31:24 32:8,11
33:16 36:13,16
37:19
**completed** 39:11
**Computer-Aided**
39:9
**concluded** 38:11
**conditions** 16:21
17:2,5 19:3
**Conducted** 25:14
**confidence** 36:23
**connection** 8:2
**consistent** 20:6 31:2
**contained** 16:21
**contents** 12:3
**contract** 8:8,9,10,17
27:2 31:18 32:1,5
33:9 34:19,20
39:15
**conversational** 5:16
**corner** 9:14,18 15:12
30:1
**Corporation** 28:5
**correct** 7:16,17,21
8:15,16 10:4,23,24
12:5,6 13:20,21
15:3 16:1,15,16,18
16:19,22,23 17:2,3
18:21,22 19:4,11
19:12 20:15,16,23
20:24 21:2,3,22
22:24 24:2,13 25:1
25:2,14,15,18,20
25:23 26:1,2,4,7,8
26:10,13,17,18,18
27:7,8,12,13 28:16
28:17 29:20,21
30:2,13,14 31:3,4,8
31:9 32:19,20,23
33:5,8,12,19 34:12
34:17,19 35:13
37:10,11,15,16,20
37:21,25 38:1 39:9

**correctly** 17:10
36:18
**counsel** 39:13
**count** 8:19 25:20
**County** 2:18,18 4:10
26:3 39:3
**couple** 4:22 10:1
**court** 1:1 4:11 5:2,4
5:10,22 39:4,14
**Courthouse** 22:9
**cover** 27:2 29:12
33:10
**coverage** 8:12 26:9
26:23 27:1 28:21
29:9,10 30:9 34:11
**create** 5:11
**credentialed** 30:10
**cues** 5:9
**current** 6:1 9:12
**currently** 10:3,6
17:9

**D**

**D** 2:15 3:1
**date** 28:8
**DAVID** 2:19
**day** 39:16
**days** 26:3
**DC** 2:12
**dcalderhead@clp-...**
2:21
**Dean** 1:19 39:4,21
**December** 1:16
39:16
**declaration** 35:15
36:1
**deemed** 14:16
**Deeming** 9:4,5
**Defendant** 2:6,10
**Defendants** 1:9 2:13
2:18
**defined** 39:15
**definition** 21:9,11
24:7,11,16 25:9
**delivery** 8:13 31:2

**delve** 5:15
**Dennis** 2:15
**Department** 2:7,22
11:25 12:8,18
20:19 35:1
**deposed** 4:3
**deposition** 1:13 3:5,6
3:7,8 4:12,15,18
5:1,6,15 6:24 7:2,3
7:8,12,16,23 8:6,7
8:25 9:2,8,11,21
15:5,6,15 18:4,5,7
19:14,15,24 24:12
35:21,24 38:11
39:10
**describe** 10:12,18
**description** 25:13
29:22 30:5,16,18
30:21
**detailed** 30:21
**detailing** 20:25
**details** 15:22 18:2
**development** 13:25
30:15
**Diane** 18:4,6
**different** 25:16
30:12
**directly** 31:22 32:18
32:19
**discontinued** 14:23
**discuss** 14:5
**discussed** 9:24
**distributed** 37:24
**District** 1:1,1 2:8
4:12
**divided** 37:13
**DIVISION** 1:2
**divulging** 36:21
**document** 7:7 8:22
15:10,14,17,20,21
15:24 16:4,9,11
28:14 34:25 35:19
36:5,7,9
**documents** 8:1 9:1,6
9:23 10:1 15:16

36:8
**doing** 5:1
**dollars** 19:6
**Doylestown** 39:16
**Dr** 17:12,15,18,22
18:24 19:1,5 31:5
31:11 33:3 35:16
35:19 36:24 37:1,6
37:15,18,25
**draft** 11:24 12:2 14:2
**duly** 4:2 39:5,6
**Dwan** 1:4 36:12,14

**E**

**E** 2:8,24 3:1 39:1,1
**earlier** 24:12
**earned** 33:17
**easier** 24:22
**Eastgate** 23:1
**effect** 14:22
**effectively** 4:24
**efficiently** 4:25
**eight** 25:16 26:19,24
**either** 11:5 12:20
14:25
**electronic** 13:3,5,10
**Elementary** 22:21
23:4
**email** 14:6
**employed** 10:3,7,9
17:16,19
**employee** 39:13
**employment** 32:4
35:17
**engaged** 28:21
**ensure** 5:5 13:18
**entails** 10:14,19
**entered** 27:20 28:12
29:6,9
**entirety** 7:11
**entity** 11:3 33:11
**enumerated** 30:13
**envision** 6:16
**EPM** 13:3,5,8,9
**especially** 4:25

ESQ 2:2,6,11,15,19
  2:23
established 37:4
et 1:8
etran 38:9
event 6:5,11,17 14:1
exactly 37:21
examination 3:2 4:2
  4:4
examples 26:19,24
excerpt 19:20
excess 17:7 19:2,9
executive 10:15
  13:16 17:8,8
Exhibit 3:5,6,7,8 7:2
  7:3,24 15:5,6 19:14
  19:15 24:17 25:10
  30:2 33:25 35:21
  35:24
exhibits 3:4 38:10
existence 28:19
  34:21 35:10
expectation 16:25
expires 39:22
explanation 5:8
extent 19:1 28:11

**F**

F 39:1
facility 21:21
fair 6:14 14:18 26:3
fairly 7:25
fairs 26:12
familiar 20:1
familiarity 16:10
Family 22:12 23:11
  23:14 30:8
fast 25:19
federal 4:11 11:3,9
  12:13 17:6,8,8
  18:16,18 19:4,4,6
  19:11 20:17 21:8
  21:11 24:11 27:7
federally 10:22 11:1
  11:2

feel 5:17
fifth 20:11
filed 4:10
finalizing 20:8 35:12
financially 39:13
financials 13:4,6
finish 5:23 6:20
firm 39:14
first 4:2 27:19 28:15
  28:19 30:5 31:11
  31:24 39:6
fiscal 16:12
five 7:11,24
five-minute 33:22
FLAIM 2:11
floor 2:24 29:10,12
following 16:15
follows 4:3
foregoing 39:9,11
form 20:12 21:6
  24:18,24 25:9,9,17
  25:22,25 27:11
formal 13:23
Forman 2:3
format 20:1,5
formulation 29:15
  30:17 34:14
frankly 6:4
Frequency 25:12
FRIENDS 1:4
front 8:20 27:24
Fry 2:15
full 9:12 17:5
funds 17:6
further 39:10,12,14

**G**

Gay 2:24
general 16:10
generally 10:12,19
  15:19 20:1 21:6
Georgetown 21:23
give 7:16 9:11 21:13
given 4:15 39:7,10
go 14:3 25:21

goal 13:18 16:24
  20:18
goes 32:18,21
going 4:22 5:17 6:12
  35:11
GOLDWASSER
  2:15
good 4:6,7
Goshen 23:11
government 11:4
grant 11:3,22 12:3,7
  12:10,15,17,24
  13:1,11,12,15,19
  14:2,9,17,19,22
  15:21,22 16:13,25
  17:6 18:12 19:4,4,6
  19:11,20,23 20:2,9
  20:17,20 25:4 27:7
  27:11 33:5,6 34:4
  34:21 35:12
grantee 16:17
grants 11:9,12,16
  12:12,13,22 14:15
ground 4:23
GUARDIANS 1:4
guess 9:14
gynecological 8:12

**H**

Hamersville 23:4
Hamilton 4:10
hand 39:15
happens 6:5
happy 6:19
hard 5:10
head 5:9 27:21
header 25:1
heading 28:5 30:4
health 1:7 2:14,14,18
  2:18 7:19 8:15
  10:23 11:1,2,25
  12:8,19 13:3,5,13
  20:19 22:18 23:10
  24:4,15 26:12 27:9
  27:16 28:13,24

29:20 30:24 31:7
  31:15,22 32:17
  33:4,18 34:23 35:1
  37:8,23
HealthSource 2:24
  7:15,20 8:14 9:19
  10:3,10,13,18,22
  11:8,16,18,23 12:9
  12:13,23 13:2,17
  13:23 14:11 16:18
  17:1,19,23 18:1,12
  18:14 19:8,21
  20:13 21:7,14,15
  21:17,19,20,25
  22:3,6,13,16,19,22
  23:2,5,7,12,15,17
  23:18,21,23,24
  24:1,6,8 27:16
  28:12,21,25 29:1,7
  29:14 31:11,18,19
  31:24 32:6,10,13
  32:18,22 33:15,15
  34:11,16 35:17
  36:17,24 37:12,14
  37:20,24
help 5:5
helpful 24:21
hereinafter 4:3
hereunto 39:15
Hillsboro 22:18
home 25:25 26:15
Hope 23:20
hospital 2:14 8:15
  24:4,10 25:21 27:3
  27:9,17 28:13,25
  29:8,10,12,20
  30:25 31:2,22 32:3
  32:17 33:4,8 34:10
  34:24 35:3,4 37:10
hospitals 24:16
house 13:10 26:20
  29:18 30:6,9 31:1,6
  32:9,11,15 33:2,17
  34:16,24 37:6
HRSA 9:4,5 13:15

Coast to coast coverage
Unsurpassed excellence

Evans Reporting Service
800-256-8410

Over 25 years
award-winning service

13:19 14:10 20:8
20:19 24:7 27:6
35:1,13
**Human** 11:25 12:8
12:19 13:13 20:20
35:2

**I**

**identification** 7:4
15:7 19:16 35:22
**identified** 24:5
**identifies** 24:25
25:12
**identifying** 34:15
**II** 17:8
**implementation** 29:2
34:9
**included** 14:17 25:5
**includes** 14:19
**including** 20:25
36:15
**inconsistent** 19:3
**incorporated** 14:9
**individual** 17:7
**information** 8:1 12:4
12:24 13:18 14:13
25:5,11
**initial** 29:2
**input** 12:4,5,24 13:1
**inquiry** 7:25 8:2
**interested** 39:13
**internal** 13:2
**involved** 11:22
**involvement** 36:25
**item** 15:25 16:17
**items** 30:12

**J**

**J** 2:2 36:11
**Jackson** 11:17,18
12:5 14:3,12 20:7
**Jackson's** 12:22
13:23
**January** 15:25 16:1
16:2
**jump** 5:18

**Justice** 2:7

**K**

**Kiely** 2:15
**Kimberly** 1:13 3:2
4:1,4 9:13 39:6
**kind** 5:18 20:4
**Kindergarten** 26:15
**know** 6:6,18 9:15
12:7 17:12,15,18
27:19 32:7 36:7
**knowledge** 36:11
**known** 35:10

**L**

**labeled** 16:20
**labor** 8:12 31:1
**larger** 24:20
**lawful** 4:1
**lawsuit** 4:9
**lay** 20:18
**laying** 34:22
**Leah** 36:12
**Lebanon** 23:17
**left** 18:1
**left-hand** 25:10
**length** 7:11 8:17
**level** 17:8
**limit** 18:16,19
**line** 15:25 16:17
25:21,21
**Lisa** 2:14 11:17
**listed** 15:10 21:6,16
22:24 25:17 26:21
26:22,24 27:1,5,10
28:5 29:23 34:24
35:7,9
**lists** 17:5 20:12 24:18
30:1
**little** 24:22 25:19
**LLC** 2:3,14,18
**LLP** 2:15
**located** 9:17
**location** 25:11,23
26:1,4,7,10,13
27:10

**locations** 24:19,25
25:6,14,17 26:17
27:11 34:23
**Lockemeyer** 2:20
**long** 6:17 10:9 17:18
17:21
**look** 20:11 27:25
**looking** 9:3 16:3,20
17:4 19:24 21:4
24:18 36:10
**Loveland** 2:21 9:15

**M**

**M.D** 2:19 36:11
**M.D.s** 30:8
**majority** 13:7
**making** 37:6,19
**management** 13:9
13:10
**manner** 6:8
**MARGARET** 2:6
**margaret.castro@...**
2:9
**margin** 25:10
**mark** 7:2 15:4 19:14
**marked** 7:3,24 15:6
19:15 35:21,23
**market** 19:7
**marketing** 13:24
**matter** 35:20
**MD** 2:4
**mean** 18:19 21:10
**Meaning** 24:8,10
**means** 24:14 39:8
**Medicaid** 2:23 36:15
**medical** 20:15,23
26:6
**meet** 25:8
**memory** 35:25
**mentioned** 9:7 10:1
24:12
**Mercy** 1:7 2:13,14
8:15 24:4,10 27:9
27:16 28:13,20,24
29:1,7,11,20 30:7

30:24 31:7,15,22
32:6,12,17 33:4,14
33:18 34:10,23
37:8,23
**metrics** 13:4,6
**middle** 8:22 22:21
23:4 30:4
**Miller** 18:7
**Miller's** 18:4,11
**MINOR** 1:3
**minutes** 4:22 37:5
**moments** 10:1
**monetary** 36:13
**money** 18:12 19:11
31:23 32:10,24
33:1,5,6,7,9,11,18
37:5,9,17,22
**Mount** 21:20 22:6,21
22:24
**MV** 30:8
**Myles** 2:2 4:8 6:6
**myles@malpracti...**
2:5

**N**

**N** 3:1
**N.B** 1:3
**name** 4:8 9:12 16:17
**NATURAL** 1:4
**NB** 36:14
**NCC** 30:9
**necessary** 5:8
**need** 5:17 6:17 11:5
20:15,22
**neglected** 9:10
**negotiate** 30:20
**negotiation** 29:15
**negotiations** 29:2
**new** 14:15,20 15:1
22:12
**Nineteen** 10:11
**noes** 5:7
**nonverbal** 5:9
**Notary** 39:5
**Notice** 6:23 7:23

8:24 9:4,5 15:10,21
16:22
**number** 7:24 15:5
16:18 19:14 24:17
35:24
**numbers** 8:21
**Nursing** 26:15
**NW** 2:11

**O**

**OB** 28:21
**OB-GYN** 17:16
22:15 23:14 29:11
29:12 30:21 33:10
**obstetrical** 8:11
34:11
**obstetrician** 17:22
**obstetricians** 29:19
30:25 34:16
**obtain** 14:12
**obviously** 36:2
**office** 2:7 9:17 39:16
**officer** 10:15 13:17
26:20 29:19 30:6,9
31:1 32:9,11,15
33:3,17 34:24 37:6
**officers** 31:6 34:17
**Offutt** 2:3
**OH** 2:9,16,21,25
**Ohio** 1:1 2:8,22,24
4:12 7:15,19,20
8:14 9:15,19 10:4
10:10,14,18,22
11:8,16,19,23 12:9
12:13,23 13:17,23
14:11 16:18 17:1
17:23 18:1,13,14
19:22 20:13 21:8
21:17,19,20,25
22:3,13,16,19,22
23:2,5,7,12,15,18
23:21,24 24:6,8
27:16 28:12,25
29:7 31:12 32:10
32:22 34:11,16

35:17 36:17 37:12
37:20 39:2,5,16
**okay** 5:12 6:1,9,21
7:1 34:3
**old** 15:1
**open** 21:12
**operated** 21:17,19
**operating** 23:8,9
**operational** 24:15
**operations** 10:16
**opportunity** 7:10,25
18:3
**Orab** 21:20 22:21,24
**order** 30:8
**orders** 38:7
**originated** 37:10
**originating** 32:16
33:18 37:18
**outset** 9:11
**outside** 19:10 37:19
37:22
**overlook** 11:12,24
12:2
**oversee** 13:14
**owned** 21:16,18
**owning** 23:8,9

**P**

**P-A-T-T-O-N** 9:13
**p.m** 1:16 38:11
**page** 8:21 20:4,4,12
27:22 28:1,3,4
29:23
**pages** 7:11 8:17
29:24
**paid** 19:5,7,8 32:17
33:11
**PAMELA** 2:23
**paragraph** 17:5
36:10
**PARENTS** 1:3
**part** 12:21 20:17
25:3 30:16 32:4,24
33:1,17
**participate** 25:8

**participated** 29:14
30:15
**particular** 15:17
28:2
**particularly** 6:16
**party** 39:13
**passed** 37:12
**passing** 31:24
**patient** 28:22 29:5
29:10 30:7
**patients** 21:2 31:2,7
37:7
**Patridge** 2:19
**Patton** 1:13 3:2 4:1,4
4:6 9:13,21 10:4
17:10,13 19:17,19
24:19 26:20 28:11
33:24 34:6 35:16
36:1,18 38:3 39:6
**pay** 17:6,9 18:13
**payers** 36:15
**paying** 33:14
**PDF** 20:12
**Pediatrics** 21:23
23:1
**pending** 6:20
**people** 11:4
**percent** 32:14,15,16
32:18,21 33:16
37:13,14
**period** 15:24 16:2,3
16:5,6
**person** 14:6,7 30:8
**perspective** 13:16
**Peschke** 2:20
**Pharmacy** 23:23
**phrased** 6:13
**physicals** 26:16
**physician** 8:12 17:17
26:23 31:20 32:1
32:14,19
**physician's** 18:20
**physicians** 18:14
21:1 27:2 31:15,23
31:25 32:2 33:3

**place** 39:11
**Plaintiff** 1:5 2:2
**Plaintiffs** 4:9 37:2
**play** 11:9
**please** 5:22 6:6,18
9:1,22,22 33:22
38:10
**point** 5:14 6:3
**poorly** 6:4
**Popp** 2:23 36:22
**Poster** 2:2 3:3 4:5,9
33:21 38:2,9
**potential** 14:20
**potentially** 15:2
**pots** 37:13
**practice** 13:9,10
22:12 23:11,14
**practices** 21:18
**preparation** 9:21
11:22 12:22 16:9
18:4,9 19:23
**prepare** 8:1 14:3
36:8
**prepared** 36:7,9 39:8
**preparing** 36:4
**presence** 39:8
**president** 10:8,10,13
10:17,20 11:7,11
11:15 13:17,24
**Pretty** 4:8
**previous** 14:15
**primary** 11:4
**prior** 7:7,12 11:13
14:20 15:14
**private** 33:7,11
**privately** 36:12
**probably** 4:19
**proceeds** 20:20
**process** 4:21 11:9
13:15 20:18 25:4
**produced** 39:8
**product** 20:7
**Professional** 8:11,25
27:15,23 29:15
30:17 31:8 33:2

Coast to coast coverage
Unsurpassed excellence

Evans Reporting Service
800-256-8410

Over 25 years
award-winning service

34:9,14 35:11 37:9
**program** 29:12
**project** 16:2,3
**proposed** 14:4
**protect** 28:21
**provide** 5:6 20:21
29:20 32:3
**provided** 31:6,15
32:12 33:4 36:14
37:2
**provider** 30:6,11
32:8 33:16
**provides** 11:4
**providing** 20:13 21:1
30:9 31:1 37:7
**Public** 39:5
**purposes** 7:4 15:7
19:16 35:22
**pursuant** 11:10
24:11 31:7 37:8
**put** 38:7

**Q**

**qualified** 10:23 11:1
11:2 24:15 30:20
39:5
**quality** 13:4,6
**quarter** 28:16
**question** 5:19,20,23
5:25 6:1,4,7,12,20
6:21 9:10 24:24
35:6
**questions** 5:7,17
20:5 38:3
**quick** 33:21

**R**

**R** 1:19 39:1,4,21
**R.N** 2:14
**rate** 17:7 19:7
**re-asking** 24:24
**read** 17:10 30:6
36:18
**really** 33:18
**recall** 35:15 36:2
**receive** 12:14,15

32:11,15
**received** 32:24 33:1
36:16
**receives** 18:13 32:14
**receiving** 36:13
**Recess** 33:23
**recipient** 16:25
**recollection** 28:10,23
31:10 36:4
**record** 5:5,11 13:5
38:8
**records** 13:3
**reduced** 39:8
**referenced** 18:17
**referring** 28:1
**refresh** 28:10
**refreshes** 35:25
**regarding** 29:1
**regular** 36:16
**Reisterstown** 2:3
**relative** 20:8 35:16
36:23 39:12
**remaining** 32:21
**remember** 29:4
35:18
**remitted** 31:25
**remitting** 33:15
**Remote** 1:13 2:1
**remotely** 39:11
**removal** 15:1
**removed** 4:11
**Rendigs** 2:15
**rephrase** 6:8
**reporter** 5:2,4,11,22
38:7 39:4
**reporting** 39:14
**represent** 4:9 19:19
**representation** 36:23
**representative** 7:15
7:19
**request** 30:7
**require** 30:23
**required** 30:25 32:2
32:3
**requirement** 27:2

**requirements** 15:23
**residency** 29:11
**Resources** 12:1
**responses** 5:7
**responsibility** 13:14
**revenues** 19:8
**review** 7:10 8:1
11:24 13:11 18:3,8
19:22
**reviewed** 9:20,23
20:7
**Richmond** 22:12
**right-hand** 15:12
28:6 30:1
**Ripley** 21:25
**RN** 30:8
**Road** 2:3 9:14
**role** 10:13,17,19 11:7
11:8
**Rounding** 35:5
**rounds** 26:6 27:4
**RPR** 1:19
**Rule** 39:15
**rules** 4:23

**S**

**safety** 29:5
**salaries** 18:13
**salary** 17:7 18:20,24
19:1,5,6
**satisfied** 17:2
**saw** 5:1
**saying** 30:11
**says** 30:5 36:10
**SBHC** 22:21 23:4
**scale** 17:9
**school** 23:4,8
**school-based** 23:10
**scope** 21:8,10,13,14
21:15 24:11,14
**screen** 15:8 19:17
**screening** 26:3
**seal** 39:16
**Seaman** 24:1
**SEAN** 2:11

**sean.flaim@hhs.gov**
2:12
**second** 14:14 28:5
**Secours** 1:7 2:13
**section** 11:10 25:1
**see** 7:5 15:8,11 19:17
24:22 26:20,23
30:7 35:24
**seen** 7:7 15:14,16,17
16:9 20:6 35:25
**sense** 6:5
**sentence** 30:11
**sentences** 30:6
**September** 12:20
16:14 19:22 34:5
**service** 8:11 14:8,12
14:20,21 20:12,25
21:4,5,7 22:4,7,10
22:12,15,18,22
23:2,5,12,15,17,21
23:24 24:2,5 30:22
**services** 8:25 12:9,19
13:13 20:20 27:15
27:23 29:16,19,22
30:5,16,17,18,22
30:24 31:1,8,15,16
31:17,19 32:3,9,12
33:2,3,10,17 34:9
34:15 35:2,11
36:14 37:9
**set** 32:5 39:15
**seven** 8:20
**shakes** 5:9
**shift** 33:24
**shifting** 24:17
**show** 6:23 15:4 19:13
35:23
**showed** 8:8
**side** 13:9
**signature** 27:22 28:4
28:6,8 38:6
**signed** 35:14 36:2
**signing** 35:15,18
**similar** 19:24
**similarly** 5:19

Coast to coast coverage
Unsurpassed excellence

Evans Reporting Service
800-256-8410

Over 25 years
award-winning service

**site** 14:13,24 15:1,1
  21:12,13,14,15
  22:1,4,5,7,10,13,15
  22:19,22 23:2,5,12
  23:15,18,21,24
  24:5,15
**sites** 14:8,15,16,20
  14:21 20:12,25
  21:4,5,7,16 24:2
**Six** 8:19,19
**somewhat** 5:15
**sorry** 8:20 17:20
  18:2
**source** 7:19 36:16
  37:18,19,23
**sources** 13:2 19:10
**Southern** 1:1 2:8
  4:11
**specific** 16:9 27:10
**specifically** 9:8
  26:22 27:5 34:15
  34:24 35:6,9,19
**specified** 39:11
**spend** 4:22
**spoken** 18:6
**sports** 26:9,16
**SS** 39:3
**staff** 25:8
**stand** 13:8
**start** 5:19,24
**started** 31:11
**State** 2:22 39:2,5
**stated** 37:21
**States** 1:1 2:6,10
**Stenotype** 39:8
**Stephanie** 1:19 39:4
  39:21
**Street** 2:8,16,24
**strike** 16:24 17:21
  24:9 32:25 36:21
**submission** 11:13
  13:15 34:21 35:13
**submitted** 11:25
  12:8,18,23 13:13
  13:19 14:10,19

16:14 19:21 27:6
  34:5 35:1
**submitting** 20:8
**subsection** 21:6 24:5
  34:2
**suggestions** 14:1
**Suite** 2:3,8,11,16,20
**supervise** 11:11
**Sure** 9:13
**sworn** 4:2 39:6
**system** 13:3 33:8

**T**

**T** 39:1,1
**take** 4:12 5:11 6:18
  6:21 20:4 25:19
  32:2 33:21 38:9
**taken** 33:23 39:11
**talked** 18:6
**talking** 34:1
**team** 26:9
**tell** 9:20 15:16 30:19
  35:3,8
**terms** 12:3 14:8
  16:21 17:1,4 19:3
  29:22 32:8
**testify** 8:2 39:6
**testimony** 7:20 18:9
  18:12 39:7,10
**Thank** 4:8 8:24
  24:23 38:3,5
**things** 5:10
**think** 14:14 38:2
**third** 17:5 30:11
**third-party** 36:15
**three** 9:25
**threshold** 18:20
**Thress** 17:12,15,18
  17:22 31:5,11 33:3
  35:19 36:11,24
  37:1,6,15,18,25
**Thress'** 18:24 19:1,5
  35:16
**time** 4:17,21 12:17
  38:4 39:11

**Timothy** 17:12 36:11
**title** 13:23
**today** 4:13 5:6 7:20
  16:10
**today's** 7:8,12 8:5
  9:2,8,21 15:15 18:5
  19:23
**Toft** 2:14
**told** 36:22
**tone** 5:16
**top** 15:11 27:21 30:1
**transcript** 18:8
**transcription** 39:9,9
**treatment** 20:14,21
  21:2 31:6 37:1,7
**Tri-Ridge** 2:20
**true** 39:9
**truth** 39:6,7,7
**Tuesday** 1:16
**turn** 31:20
**two** 9:6 24:1 26:16
  30:6 37:13
**type** 25:12 26:21,24
  34:25 35:7
**types** 25:13,16

**U**

**U.S** 2:7,7
**uh-huh** 5:9
**ultimately** 31:5
**underinsured** 11:5
**underserved** 20:14
  20:22
**understand** 6:7,9
  7:14,18,22 12:12
  18:11
**understanding** 4:13
  10:25 12:21 14:11
  15:19 16:8 17:25
  18:15,23 21:5 25:3
  28:18,24 29:6,13
  31:14,21 33:14
  34:20 36:20,25
  37:17
**understood** 6:2,13

19:9
**uninsured** 11:5
  20:14,22
**unit** 8:13
**United** 1:1 2:6,10
**USAA00046** 16:20

**V**

**Van** 23:20
**various** 29:19
**verbal** 5:7
**versus** 31:23 32:9
**vice** 11:11,15 13:24
**Vine** 2:16
**visits** 25:25
**Vogelstein** 2:3
**vs** 1:6

**W**

**Wais** 2:3
**waive** 38:6
**want** 33:24 35:23
**Wards** 9:14,18
**Washington** 2:12
  22:6,9
**wasn't** 35:8
**WAYNE** 39:3
**we'll** 7:2 19:14 38:6
**we're** 4:25 19:24
**we've** 6:20 7:23
**went** 25:19 26:19,25
  37:13,14
**WESTERN** 1:2
**WHEREOF** 39:15
**Wilmington** 24:1
**within-named** 39:6
**witness** 38:5 39:6,8
  39:15
**Women's** 2:18,18
**worded** 6:4
**work** 20:7 32:15
**working** 31:11
**wouldn't** 34:23
**written** 18:8

**X**

Coast to coast coverage
Unsurpassed excellence

Evans Reporting Service
800-256-8410

Over 25 years
award-winning service

**X** 3:1 30:12

---

**Y**

**year** 12:17 14:18,21
  16:12,15 30:10
**years** 4:19 10:11
**years'** 14:15
**Yeses** 5:7

---

**Z**

**zip** 9:15
**Zoom** 5:1

---

**0**

---

**1**

**1** 3:5 7:2,3,24 15:25
  16:2,18
**1-1-15** 16:7
**1:20-CV-699** 1:6
**100** 32:16
**11** 28:3,4
**12** 29:23,24
**12-31-15** 16:7
**13** 29:23,24
**14** 29:23,24
**15** 3:6 4:19
**150** 2:24
**17** 8:23
**180,500** 17:9
**181,000** 19:6
**181,500** 18:21 19:2
  19:10
**1829** 2:3
**19** 3:7

---

**2**

**2** 3:6 15:5,6
**2-28-13** 28:9
**2:00** 1:16
**20** 32:14,21 37:13
**2013** 28:16
**2014** 11:14,21 13:22
  16:15 19:22 23:7
  34:5
**2015** 11:14,21 13:22

13:22 15:25 16:1
  16:12 18:24 23:7
  27:14
**20201** 2:12
**2021** 1:16 39:16
**2025** 39:22
**21** 1:16
**210** 2:20
**2100** 2:11
**21208** 2:4
**21st** 2:24
**221** 2:8
**2650** 2:16
**28(D)** 39:15

---

**3**

**3** 3:7 19:14,15 24:17
  25:10 33:25
**3:05** 38:11
**30** 39:22
**31** 16:1
**31st** 39:16
**330** 2:11 11:3,10
  12:15,17,22 13:12
  14:2,9,19 15:22
  16:13,25 18:12
  19:4,20 20:2,9,17
  25:4 27:6 33:5,6
  34:4,21 35:12
**35** 3:8

---

**4**

**4** 3:3,8 35:21,24
  36:10
**400** 2:8
**410.998.3600** 2:4
**4224** 9:18
**424** 9:14
**425** 2:3
**43215** 2:25
**45** 9:15
**45140** 2:21
**45150** 9:16
**45202** 2:9,16
**4th** 2:8

---

**5**

**5A** 25:9
**5B** 20:12 21:4,6,16
  24:5 25:9
**5C** 24:18,24 25:17
  27:11 34:2

---

**6**

**600** 2:16
**6281** 2:20

---

**7**

**7** 3:5 15:25

---

**8**

**80** 32:15,18 33:16
  37:14