UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| N.B., a Minor, by her Parents, Natural Guardians, and Next Friends DWAN BRAY and AARON BRAY, | : : : : | Case No. 1:20-cv-699 |
| Plaintiffs, | : : | District Judge Timothy S. Black |
| v. | : : | |
| BON SECOURS MERCY HEALTH, INC., *et al.*, | : : : | |
| Defendants. | : | |

## UNITED STATES OF AMRERICA'S RESPONSE IN OPPOSITION TO SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO REMAND

This litigation arises out of alleged medical malpractice by obstetrician Dr. Timothy Thress during an evening hospital visit at Mercy Health Anderson Hospital Family Birthing Center ("Mercy Anderson") by Dwan Bray on November 11, 2015. At the time, Ms. Bray was 37 3/7 weeks pregnant. Although Ms. Bray had decided on home birth, she was also being followed by Dr. Barbara Patridge of Brown County Women's Health, who had directed Bray to present to Mercy Anderson that evening after Bray had called her with some concerns. Dr. Patridge had admitting privileges at Mercy Anderson, and thus Ms. Bray's admitting and attending doctor for the evening was Dr. Patridge even though she never came into the hospital to see Ms. Bray that evening.

1

I. **Facts**

The evening of November 11, 2015, Dr. Thress was on-call supervising patients in labor and delivery and covering any obstetrical admissions from the emergency department. He was employed at the time of Bray's visit by HealthSource of Ohio, Inc. ("HealthSource"), a federally qualified health center based in Milford, Ohio. In 2015, HealthSource had applied for and been deemed as an employee of the Public Health Service under the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233(g). Deeming Notice, ECF No. 24-3. As such, HealthSource and its employees' medical malpractice coverage was provided under the Federal Tort Claims Act.

Under Dr. Thress's contract with HealthSource, he was required to obtain and maintain hospital privileges and participate in hospital and/or emergency room on-call rotations for hospital care in accordance with on-call agreements executed by HealthSource with hospitals. Employment Agreement 3, 7, ECF No. 32-5; Patton Decl., ¶ 3, attached hereto as Exh. 1. Dr. Thress obtained and maintained hospital privileges at Mercy Anderson. Memo. from Heather Nichols, ECF No. 27-4; Patton Decl., ¶¶ 2 - 3. In 2015, Mercy Anderson required as a condition of obtaining hospital privileges that members of its medical staff provide in-hospital call. Mercy Health Medical Staff Bylaws 14-15 (July 22, 2014), attached hereto as Exh. 2; Mercy Health Medical Staff Rules and Regulations 3 (Oct. 21, 2015); attached hereto as Exh. 3; Patton Decl., ¶ 4.

In accordance with Mercy Anderson's medical staff requirements, HealthSource executed a Professional Services Agreement with Mercy Anderson to provide overnight and weekend obstetrical on-call service. Prof'l Serv. Agreement 1-2, ECF No. 32-2; Patton Decl., ¶ 5. Under the Professional Services Agreement, Mercy Anderson paid a flat hourly rate to HealthSource for the physician's time and Mercy Anderson retained all rights to bill the patients directly. Prof'l Serv. Agreement at 4, 15; Patton Decl, ¶ 5. HealthSource was responsible for submitting timesheets to Mercy Anderson, which would in turn issue payment to HealthSource. Prof'l Serv. Agreement at 4, Patton Decl., ¶ 6. HealthSource, in turn, kept 20% of the billing and issued 80% as compensation to the physician. Patton Depo. 32:7-23 (Dec. 21, 2021), ECF No. 32-1; Patton Decl., ¶6. HealthSource was responsible for withholding taxes, insurance, and other benefits from this compensation. Patton Decl., ¶ 7.

**II. Legal Standards**

Under FSHCAA, 42 U.S.C. § 233(g), a federally qualified health center and its employees may be deemed by Secretary of the Department of Health and Human Services ("HHS") as employees of the Public Health Service ("PHS") with regard to allegations of personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, *i.e.* medical malpractice. FSHCAA further provides that the exclusive remedy for allegations of medical malpractice by such deemed entities and their employees is suit under the Federal Tort Claims Act ("FTCA") against the United States. *Id.* Such deeming applies to services provided

to all patients of the federally qualified health center as well as to some individuals who are not patients of the federally qualified health center. *Id.* at (g)(1)(B). In particular, services to non-patients will be covered when the services are required to be provided to such individuals under an employment contract between the federally qualified health center and the individual provider. *Id.* at (g)(1)(C)(iii).

Upon certification by the Attorney General or his designee that a defendant was acting within the scope of employment at the time the incident took place, a matter shall be removed from state court to federal district court. 42 U.S.C. § 233(c). The Attorney General's certification is conclusive to establish subject-matter jurisdiction for removal. Once removed, a district court may review on motion to remand the certification made by the Attorney General. *Id.* To rebut the certification, a party seeking to do so bears the burden to prove by a preponderance of the evidence that the deemed employee was not acting within the scope of their employment. *Singleton v. United States*, 277 F.3d 864 (6th Cir. 2002), *overruled on other grounds by Hawver v. United States*, 808 F.3d 693 (6th Cir. 2015).

When reviewing a challenge to the scope certification for a specific employee, courts look to state law regarding the scope of employment to address whether the actions taken by the employee occurred within or exceeded the scope of employment with the health center. *Dolan v. United States*, 514 F.3d 587, 593-94 (6th Cir. 2008). In Ohio, "conduct is within the course and scope of employment if (1) it is of the kind the employee is employed to perform, (2) it occurs substantially within the authorized time and space limits, and (3) it is actuated, at least in part, by a purpose to serve the

master." *Byrd v. Smith*, 904 N.E.2d 962, 972 (Oh. Ct. Com. Pl. 2007), *aff'd* 2008-Ohio-3597, ¶ 34 (Oh. Ct. App. 2008) (*citing* RESTATEMENT (SECOND) OF AGENCY § 228 (1957)).

**III. Argument**

It is undisputed that HealthSource was a deemed employee of the PHS during 2015 under 42 U.S.C. § 233(g). It is undisputed that Dr. Thress was a physician employed by HealthSource to provide obstetric care and that HealthSource's contract with Dr. Thress required him to obtain hospital privileges and participate in hospital call. It is undisputed that HealthSource had entered into a contract with Mercy Anderson to provide overnight and weekend call coverage due to Mercy Anderson's lack of a residency program and Mercy Anderson's requirement that its medical staff provide on-call services. And, it is undisputed that Dr. Thress was working on-call at Mercy Anderson when he treated Dwan Bray on November 11, 2015. Dr. Thress, working as an obstetrician, in accordance with a on-call schedule established by HealthSource and Mercy Anderson, and in accordance with his contractual responsibilities to HealthSource and to HealthSource's benefit, was working within the scope of his employment of HealthSource under Ohio law. Consequently, in accordance with 42 U.S.C. § 233(g), Dr. Thress, as an employee of HealthSource, is likewise deemed to be an employee of the PHS with respect to allegations of medical negligence regarding Ms. Bray.

In an effort to obscure the import of these facts, Plaintiffs cite selectively to 42 C.F.R. Part 6 implementing 42 U.S.C. § 233(g) as well as a general argument that Dr.

Thress's services to some of the hospital's patients were not grant supported, which Plaintiffs elide with acting within the course and scope of employment with the PHS.[1] Unsurprisingly, Plaintiff cites no statutory basis that the source of funding for particular care is relevant in making a determination regarding whether care provided by a federally qualified health center and its employees is eligible for FTCA coverage. That is because there is no statutory basis for making the distinction which Plaintiffs seek to make.

Citing to 42 C.F.R. § 6.6(d), Plaintiffs argue that "only acts and omissions related to the grant-supported activity of entities are covered." Pl.'s Supplemental Memo. 8. Plaintiff then goes on to argue that because the words "house officer" do not appear in HealthSource's grant application, Dr. Thress's on-call obstetrical coverage at Mercy Anderson on nights and weekends must not be covered by the grant. However, as provided within HealthSource's grant application, services to be provided include obstetrical care, encompassing prenatal care, intrapartum care (labor & delivery), and postpartum care. Program Review Form 4, ECF No. 27-1. This is precisely the care received by Dwan Bray when she reported to Mercy Anderson and was seen by Dr. Thress the evening of November 11, 2015. Necessarily, some prenatal, post-natal, and all intrapartum care takes place at the hospitals where HealthSource doctors hold privileges. And necessarily, during overnight periods at

---

[1] HealthSource's and Dr. Thress's deeming as PHS employees is a "legal fiction" to bring this action under the FTCA. *Lossiah v. United States*, 2019 WL 1553667, *2 (N.D.N.C). The relevant question in this matter is whether Dr. Thress acted within the course and scope of his employment with HealthSource for the purpose of his FTCA deeming. 42 U.S.C. § 233(g)(1)(A)("an entity . . . and any officer, governing board member, or <u>employee</u> of such an entity … shall be deemed to be an employee of the Public Health Service …")(underlined emphasis supplied).

the hospital, a physician holding privileges on-call would see any patients who presented to the hospital, whether patients of HealthSource, those of other providers, or those without outside OB/GYNs.

Similarly, Plaintiff cites that Dr. Thress's salary paid for by the federal grant could not exceed a rate in excess of federal executive level II of the federal executive pay scale, $180,500. Pl.'s Supplemental Memo. 12. This is true; to the extent federal grant funds could be used to pay for Dr. Thress's salary they were limited to this level. But as identified by both HealthSource's grant application and the deposition of Kimberly Patton, providers could be paid over this rate at market rates using other revenue by the health center, including the heath center's billing of patients' private insurance, Medicare, Medicaid, or billing related to provision of on-call services to a local hospital. Program Review Form 1 (stating the average salary for obstetricians was $200,000); Patton Depo. 17:4–11, 19:1–12. Plaintiffs cite no statutory basis nor any citation in the regulations that prevent HealthSource from paying market rates that would allow them to retain qualified physicians on their staff.

To the contrary, in *Agyin v. Razmzan*, the Second Circuit considered a matter in which the United States had declined to certify a physician was acting within the course and scope of employment and the defendant physician then removed the matter to federal court and moved to substitute the United States in his place. 986 F.3d 168, 171 (2d Cir. 2019). In *Agyin*, the deemed physician had billed privately for his services, in contravention of the FTCA Health Center Policy Manual, and thus the United States had argued that the doctor acted outside the scope of his

7

employment with the health center. *Id.* The court noted that the written employment contract between the deemed physician and the health center expressly permitted the doctor to bill patients at the hospital directly, in part so that the doctor could be paid at market rates. *Id.* at 185. Thus, the court concluded that the deemed physician had acted within the course and scope of his employment agreement. *Id.* at 186. This conclusion was unchanged by 42 C.F.R. § 6.6 or the FTCA Manual, as the conclusive test for FTCA coverage was whether under New York law the physician had acted within the course and scope of his employment with the health center. *Id.* at 186-87.

Finally, Plaintiffs acknowledge that 42 C.F.R. § 6.6(c) provides that covered acts and omissions may be provided to individuals who are not patients of a covered entity when the Secretary determines that 1) the provision of the services to such individuals benefits patients of the entity and general populations that could be served by the entity; 2) the provision of the services to such individuals facilitates the provision of services to patients of the entity; or 3) such services are otherwise required to be provided to such individuals under an employment contract or similar arrangement between the entity and the covered individual. Plaintiffs then argue that none of the examples in § 6.6(e) come close to describing HealthSource's agreement with Mercy Anderson, citing to *Thomas v. Phoebe Putney Health System, Inc.*, 2019 WL 6039976 (M.D. Ga. 2019).

In *Thomas*, the United States had certified the deemed health center and its employee physician and removed the matter to federal court. The plaintiffs filed a motion to remand arguing that the employee physician was not acting related to the

8

federal grant activity and that the treatment of the minor plaintiff did not fit any of the exceptions related to treatment of non-patients. As a basis, plaintiffs noted that the deemed community health center had entered into a contract to provide 24/7 pediatric hospitalist coverage to Phoebe Putney Hospital. The doctor employed by the health center at issue in the litigation worked exclusively in the hospital seeing patients, and did not see any patients at the deemed health center's clinics. Upon learning this, the United States rescinded its certification and Phoebe Putney moved the court to substitute the United States in its place. The district court declined to do so, noting that 42 C.F.R. §§ 6.6(d)(3) and § 6.6(e) "only consider FTCA coverage for treatment of non-patients where the deemed employee provides 'periodic' or 'after-hours' coverage for a hospital or other provider." *Id.* at *5.

Here, HealthSource's contract with Mercy Anderson provides evening and weekend call for the hospital where several of its employed obstetricians supervise the care of admitted HealthSource patients as well as patients of other providers or those within the general population of the community that could be served by HealthSource who come in for after-hours treatment. Dr. Thress worked primarily in the HealthSource clinics when he was not managing patients at the hospital on occasional overnight shifts that were a condition of his hospital privileges. Moreover, neither HHS nor the Attorney General has sought to rescind the decision to certify that Dr. Thress was acting within the course and scope of employment when he treated Dwan Bray in 2015. Thus, *Thomas* lends no support to Plaintiffs' arguments.

Many of Plaintiffs' arguments were also addressed in *Smith v. Harbison*, 2020 WL 6216758 (M.D. Ga. 2020). There the Attorney General had declined to certify that the deemed physician was acting within the course and scope of his employment when he delivered an infant for a non-health center patient at a hospital where he was on-call in accordance with a cross coverage agreement. The deemed physician removed the matter to federal court and moved to substitute the United States in his place. Plaintiff countered by moving to remand arguing that the hospital was not listed as a "covered location" in the grant application, that there was not enough evidence that the doctor was required to maintain admitting privileges or be on-call in accordance with his employment contract, and that there was no evidence that call coverage was reasonably necessary to enable the health center to serve the community.

The *Smith* court denied plaintiff's motion to remand and granted the deemed physician's motion to substitute. *Id.* at *5. First, the court noted that the grant application reasonably notified HHS that the deemed physician provided some services at the hospital including deliveries. Second, the court observed that the deemed physician's contract with the health center required the physician to obtain privileges at the hospital and to participate in a cross-coverage call arrangement. Last, the court observed that providing services at the hospital was reasonably necessary to enable the health center to carry out its grant-funded activities in providing for the poor in its area of operations.

As previously noted, in this case the grant application for HealthSource also cites that in-hospital obstetric services would be offered by HealthSource obstetricians. Likewise, the contract between Dr. Thress and HealthSource clearly delineated that Dr. Thress was required to obtain hospital privileges and participate in any hospital and/or emergency room on-call rotations or cross-coverage arrangements made by HealthSource. Mercy Anderson required that physicians holding privileges there participate in hospital call. And finally, the fact that Mercy Anderson lacked overnight obstetrical coverage impacted both HealthSource patients and non-patients alike. This formed an adequate basis for HHS to conclude that the provision of services benefitted both patients of HealthSource who needed after hours care as well as the general population that could be served by HealthSource community-wide, which is what led the Attorney General to certify Dr. Thress's scope of employment in this matter.

## IV. Conclusion

Consequently, as Plaintiffs have not carried their burden to prove by a preponderance of the evidence that Dr. Thress acted outside the course and scope of his employment with HealthSource when he treated Dwan Bray at Mercy Anderson, the Court should deny Plaintiffs' Motion to Remand this action back to state court.

Respectfully Submitted,

KENNETH L. PARKER
United States Attorney

s/ *Margaret A. Castro*
MARGARET A. CASTRO (#0078968)
Assistant United States Attorney
Attorney for the United States of America
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711
Fax: (513) 684-6972
Margaret.Castro@usdoj.gov