**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| N.B., A MINOR, BY HER PARENTS, NATURAL GUARDIANS, AND NEXT FRIENDS DWAN BRAY AND AARON BRAY, <br><br>   Plaintiffs, <br><br> vs. <br><br> BON SECOURS MERCY HEALTH, INC., *et al.*, <br><br>   Defendants. | CASE NO. 1:20-CV-699 <br><br> DISTRICT JUDGE TIMOTHY S. BLACK <br><br> Magistrate Judge Karen L. Litkovitz <br><br> **PLAINTIFFS' SUPPLEMENTAL REPLY IN SUPPORT OF MOTION TO REMAND** |

**SUPPLEMENTAL REPLY**

Plaintiffs, N.B. a Minor, by her Parents, Natural Guardians, and Next Friends Dwan Bray and Aaron Bray, submit this Supplemental Reply in further support of their request that this Court remand this action in accordance with 42 U.S.C. § 233(c) and 28 U.S.C. § 1447(c). *Doc#:20, Plaintiffs' Motion for Remand with Leave to Conduct Jurisdictional Discovery filed October 8, 2020 ("Motion for Remand"), PageID#:332-342*. Many of the positions asserted in Doc#:34, the United States of Amrerica's [sic] Response in Opposition to Supplemental Memorandum in Support of Motion to Remand filed May 20, 2022 ("USA's Supplemental Response"), PageID#:720-731, had been anticipated and addressed in Doc#:32, Plaintiff's Supplemental Memorandum in Support of Remand filed April 20, 2022 ("Plaintiffs' Supplemental Memo."), PageID#:582-595. But a few final responses are now warranted. As explained below, this Court lacks subject matter jurisdiction over this dispute, and a remand to the Hamilton County Court of Common Pleas should be ordered.

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

**I.     THE ATTEMPT TO LITIGATE UNDER THE WESTFALL ACT**

This Court has already ruled, correctly, that this proceeding was removed under the Federally Supported Health Care Assistance Act ("FSHCAA"), "not the Westfall Act," and that unlike the Westfall Act, "FSHCAA requires remand if, after a hearing on a motion to remand, the federal court determines that remedy under the FSHCAA is unavailable." *Doc#:26, Order Granting Motion for Leave to Conduct Additional Discovery ("June 8, 2021 Ruling"), PageID#:520-21*. For these reasons, it made sense that *unlike* under the Westfall Act, "the Attorney General's certification simply cannot conclusively establish that removal jurisdiction is proper." *Id., PageID#:521*.

It was thus surprising that the United States has again insisted, without any citation to superseding or even contrary authority, that the "Attorney General's certification" that "a defendant was acting within the scope of employment at the time the incident took place" is "conclusive to establish subject-matter jurisdiction for removal" under FSHCAA. *Doc#:34, USA's Supplemental Response, PageID#:723*. Along those same lines, the United States claims that to "rebut the certification," the Plaintiffs must "prove by a preponderance of the evidence that the deemed employee was not acting within the scope of their employment." *Id*. In support, the government relies solely upon *Singleton v. United States*, 277 F.3d 864 (6th Cir. 2002). *Doc#:34, USA's Supplemental Response, PageID#:723*. Unlike the case at bar, *Singleton* was a dispute governed by the Westfall Act, and the shifted evidentiary burden to prove a lack of subject matter jurisdiction under that law arises from the statutory presumption of the correctness of the Attorney General's certification. *Singleton*, 277 F.3d at 870-871; *Brown v. Armstrong*, 949 F.2d 1007, 1011-12 (8th Cir. 1991); *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996) (relying on *Brown*).

The government has not identified any such statutory presumption under FSHCAA

Flowers & Grube
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

2

despite having known it would need such an authority following this Court's June 8, 2021 Ruling. Instead of shifting the burden to Plaintiffs to prove the validity of the United States' removal to federal court, this Court's prior ruling should stand. The longstanding prevailing rule, which places the burden of proving federal jurisdiction upon its proponent, should be applied. *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936); *Alexander v. Elec. Data Sys. Corp.,* 13 F.3d 940, 948-49 (6th Cir. 1994); *Callahan v. Callahan*, 247 F. Supp. 2d 935, 939 (S.D. Ohio 2002). And as explained below, the evidence weighs strongly against federal jurisdiction in this instance.

**II.     THE APPEAL TO INAPPLICABLE STATUTORY PROVISIONS**

Burden shifting is hardly the only way that the United States has tried to move the goal posts to meet its burdens more easily. Relying on *Dolan v. United States*, 514 F.3d 587 (6th Cir. 2008), the government wrongly urges that "[w]hen reviewing a challenge to the scope [of] certification for a specific employee, courts look to state law regarding the scope of employment to address whether the actions taken by the employee occurred within or exceeded the scope of employment with the health center." *Doc#:34, USA's Supplemental Response, PageID#:723.* Again, this is the analytically improper approach because FSHCAA, 42 U.S.C. § 233, defines the contours of Public Health Service ("PHS") employment in a way that is substantively different from the general scope-of-employment rule provided under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346.

First, *Dolan* relies on a chain of authority finding its foundation in a provision of the FTCA, 28 U.S.C. § 1346(b). *Arbour v. Jenkins*, 903 F.2d 416, 421-22 (6th Cir. 1990) ("Whether an employee's actions are within the scope of his employment for purposes of the Westfall Act is an issue that must be determined in accordance with the law of the state where the incident occurred. 28 U.S.C. § 1346(b)."); *see Henson v. Nat'l Aeronautics*

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

3

*& Space Admin.*, 14 F.3d 1143, 1147 (6th Cir. 1994) (relying upon *Arbour*); *RMI Titanium Co.*, 78 F.3d at 1143 (relying upon *Henson*); *Singleton*, 277 F.3d at 870 (quoting *RMI Titanium Co.*, 78 F.3d at 1143); *Dolan*, 514 F.3d at 593 (quoting *Singleton*, 277 F.3d at 870). And for its part, 28 U.S.C. § 1346(b)(1) expressly defines the "scope" of a federal employee's "office or employment" by reference to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

While it references the FTCA, the FSHCAA contains no such language defining the scope of employment in the PHS according to state law. Subsection (a) uses but does not further define or constrain the phrase "scope of his office or employment" with any of the language referring to state law under the FTCA. *42 U.S.C. § 233(a)*. Vitally, Congress would have no need to enact 42 U.S.C. § 233(g) if it wanted to rely on the FTCA definition of the scope of employment. That subsection defines an elaborate process for the Secretary of Health and Human Services to deem recipients of federal grant funds to be "an employee of the Public Health Service." 42 U.S.C. § 233(g)(1). 42 C.F.R. § 6.6 would also have been wholly unnecessary if state law answered the question of the scope of employment—the Department of Health and Human Services ("HHS") never would have needed to implement 42 U.S.C. § 233(g)(1)(B)(ii) and (C), which narrowly extend the scope of employment with the PHS to "services provided" to "individuals who are not patients of the entity" under specifically enumerated circumstances.

Rather than permitting other statutory provisions to intrude into the realm more specifically governed by FSHCAA and regulated by HHS, this Court should continue to apply the correct law. *Doc#:26, June 8, 2021 Ruling, PageID#:521-22.* As this Court has already ruled, FSCHAA confers federal jurisdiction under 42 U.S.C. § 233(c) only if Defendant Timothy J. Thress, M.D. ("Dr. Thress") was "acting within the scope of

Flowers & Grube
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

4

employment with the" PHS, and 42 C.F.R. § 6.6 dictates which "specific acts or omissions are considered within the scope of employment, and covered by the FSHCAA." *Id., PageID#:521*.

These key differences between the standard FTCA scope of federal employment and FSHCAA's more carefully defined scope of employment with the PHS is the primary reason why this Court should not follow *Agyin v. Razmzan*, 986 F.3d 168 (2d Cir. 2021). In that dispute, the United States Court of Appeals for the Second Circuit applied only a state-law scope-of-employment analysis like the one defined in 28 U.S.C. § 1346(b)(1) because the "parties agree[d] that under the FTCA, New York law governs the scope-of-employment analysis." *Agyin*, 986 F.3d at 184. Remarkably, the Court of Appeals disagreed with the district court's ruling relying on "its reading of 42 C.F.R. § 6.6 and the FTCA Manual's policy on alternative billing arrangements" because "neither 42 C.F.R. § 6.6 nor the FTCA Manual purports to alter New York's scope-of-employment analysis." *Id*. In this case, there is no such agreement. In contrast to the procedural backdrop in *Agyin*, the instant Plaintiffs wholeheartedly oppose application of any scope-of-employment principles that are not found in FSHCAA or the lawfully promulgated regulations interpreting this comprehensive legislative scheme, and they explicitly object to application of Ohio's agency law in the absence of some statutory basis. At every turn, Plaintiffs have consistently argued that the scope of Dr. Thress' conceivable employment with the PHS stretched as far, and no further, than the scope of the grant awarded to non-defendant HealthSource. This Court should not be distracted or confused by the United States' last-minute Hail Mary, which lacks any real basis in the applicable law.

### III. THE UNITED STATES' SIGNIFICANT CONCESSIONS

Importantly, the United States has huddled closely to a single tenuous theory that Dr. Thress' work at Mercy Health – Anderson Hospital ("Mercy") was really done for the

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

5

sake of HealthSource, claiming that this institution required him to "obtain hospital privileges and participate in hospital call." *Doc#:34, USA's Supplemental Response, PageID#:724.* Purporting that the facts were undisputed, the government asserted that "Dr. Thress, working as an obstetrician, in accordance with a[n] on-call schedule established by HealthSource and Mercy Anderson, and in accordance with his contractual responsibilities to HealthSource and to HealthSource's benefit, was working within the scope of his employment of HealthSource under Ohio law." *Id.* After blaming Plaintiffs for citing "selectively to 42 C.F.R. Part 6 implementing 42 U.S.C. § 233(g)," the United States finally tied its theory together by referencing FSHCAA subsection (g)(1)(A), which generally establishes that the protections of FSHCAA *may* extend to an "employee" of an entity that has been deemed to be a PHS employee. *Id., PageID#:724-25.* Finally, the government tried in passing fashion to fit the relationship into 42 U.S.C. § 233(g)(1)(C)(ii) and 42 C.F.R. § 6.6(e)(2), under which the United States claims "services to non-patients will be covered when the services are required to be provided to such individuals under an employment contract between the federally qualified health center and the individual provider." *Id., PageID#:727-30.*

By choosing this specific play, the United States has conceded the rest of the field *sub silentio.* No longer can the United States claim that any treatment at Mercy was actually grant-funded by the federal government. By failing to tie the grant money to the services that Plaintiff Dwan Bray received at Mercy, the government has placed this case squarely within the application of 42 C.F.R. § 6.6(d), which mandates that "[o]nly acts and omissions related to the grant-supported activity of entities are covered." *Metcalf v. W. Suburban Hosp.*, 912 F. Supp. 382, 388 (N.D. Ill. 1996).

Unexpectedly, the United States called its own regulatory authority into question to get around the plain text of 42 C.F.R. § 6.6(d):

Flowers & Grube
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

6

> Plaintiff cites no statutory basis that the source of funding for particular care is relevant in making a determination regarding whether care provided by a federally qualified health center and its employees is eligible for FTCA coverage. That is because there is no statutory basis for making the distinction which Plaintiffs seek to make.

*Doc#:34, USA's Supplemental Response, PageID#:725.* That is an easy gap to fill for the government—42 U.S.C. § 216(a) permits rulemaking "with respect to the appointment" of members of the PHS. And 42 U.S.C. § 233(g)(1)(C) more specifically requires HHS to make decisions about which arrangements for treatment of non-patients of the PHS fall within the FSHCAA:

> Subparagraph (B)(ii) applies to services provided to individuals who are not patients of an entity <u>if the Secretary determines</u>, after reviewing an application submitted under subparagraph (D), that the provision of the services to such individuals—
>
> (i) benefits patients of the entity and general populations that could be served by the entity through community-wide intervention efforts within the communities served by such entity;
>
> (ii) facilitates the provision of services to patients of the entity; or
>
> (iii) are otherwise required under an employment contract (or similar arrangement) between the entity and an officer, governing board member, employee, or contractor of the entity.

(emphasis added).

42 U.S.C. § 233(g)(1)(C) also directs that HHS would have had to make a prior determination that Dr. Thress' work at Mercy for non-HealthSource patients was really benefitting HealthSource's grant-supported activities before such treatment fell within FSHCAA. 42 C.F.R. § 6.6(e) merely provides common scenarios for which it is not worth the time of HHS to give pre-clearance:

> HRSA decided that it would be impractical and burdensome to require a separate application and determination of

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

7

>coverage for certain situations described in the examples set forth in 6.6(e), as further discussed in the September 1995 Notice (60 FR 49417). For those situations, it was determined that the activities described in the September 1995 Notice are covered under 42 CFR 6.6(d) without the need for a separate application, <u>so long as other requirements for coverage are met, such as a determination that the entity is a covered entity, a determination that the individual is a covered individual, and a determination that the acts or omissions by those individuals occur within the scope of employment</u>.

78 FR 58202 (emphasis added). Notably, HealthSource would still have been required under these rules to acquire a predetermination of coverage for Dr. Thress' activities if they fell under 42 C.F.R. § 6.6(e)(2). *Thomas v. Phoebe Putney Health Sys., Inc*, No. 1:18-CV-096, 2019 WL 6039976, at *5 (M.D. Ga. Mar. 6, 2019); *Metcalf*, 912 F. Supp. at 387. Only subsection (e)(4) exempts certain scenarios from pre-clearance, and the government did not even mention this provision. *Doc#:34, USA's Supplemental Response, PageID#:720-31*. At no point has the United States offered proof of such an administrative determination of coverage made prior to the services Dr. Thress performed for Plaintiff Bray, choosing instead to pretend that the Attorney General's certification met this requirement. *Id., PageID#:728*. Without such a decision, the United States' unavailing attempt to squeeze within 42 U.S.C. § 233(g)(1)(C)(ii) and 42 C.F.R. § 6.6(e)(2) cannot win the day.

## IV. THE UNITED STATES' INSUFFICIENT EVIDENCE

With these concessions made, this Court would be justified remanding this matter notwithstanding the new evidence offered by the United States. But because there is a missing link between Dr. Thress' employment agreements with HealthSource and Mercy, even this aspect of the government's presentation falls flat.

First, the United States confuses the rule it relies upon. Coverage reaches treatment for "individuals who are not patients of a covered entity" under 42 C.F.R. § 6.6(d)(2) only if that care "facilitates the provision of services to patients of the entity."

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

The example given under 42 C.F.R. § 6.6(e)(2) explains that on-call agreements must ultimately enure in some way to the benefit of patients of the PHS-employee entity:

> A migrant health center requires its physicians to obtain staff privileges at a community hospital. As a condition of obtaining such privileges, <u>and thus being able to admit the center's patients to the hospital</u>, the physicians must agree to provide occasional coverage of the hospital's emergency room. The Secretary would be authorized to determine that this coverage is necessary to facilitate the provision of services to the grantee's patients, and that it would therefore be covered by paragraph (d)(2) of this section.

The United States has relied on a number of provisions in Dr. Thress' separate agreements with HealthSource and Mercy that include vague references to covering call when required. *Doc#:34, USA's Supplemental Response, PageID#:721-22*. But none of these agreements establish that call coverage was a pre-requisite for HealthSource's patients to be admitted to Mercy. The United States did not even attempt to connect this missing link between the agreements it refers to. *Doc#:34, USA's Supplemental Response, PageID#:721-22*.

It may be true that "Dr. Thress's contract with HealthSource" required him to "obtain and maintain hospital privileges and participate in hospital and/or emergency room on-call rotations for hospital care in accordance with on-call agreements executed by HealthSource with hospitals." *Doc#:34, USA's Supplemental Response, PageID#:721*. Still, there is no evidence that any such an agreement existed. Nothing in HealthSource's written arrangement with Mercy extends such privileges to HealthSource so that grant-beneficiary patients may be admitted to Mercy's hospital, nor does it require physicians to cover call in return for such a privilege. *Doc#:32-2, Professional Services Agreement dated February 8, 2013 ("Professional Services Agreement"), PageID#:644-666*. The same argument that The United States advances in support of Dr. Thress being a PHS employee at the time he treated Dwan Bray—that the Professional Services Agreement

Flowers & Grube
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

between Mercy and HealthSource benefitted "admitted HealthSource patients," is belied by the plain language of the contract. *Id*. On its face, the Professional Services Agreement was designed for and limited any conceivable benefit exclusively to Mercy and its patients—not those of HealthSource, and physicians like Dr. Thress who were privately compensated for their house officer services:

> WHEREAS, <u>Mercy desires to retain a physician with appropriate training, skills and experience to provide OB/GYN call coverage and professional medical services for [Mercy Health-Anderson Hospital]</u> pursuant to this Agreement;
>
> . . .
>
> WHEREAS, <u>[HealthSource] desires to provide the services of Providers to Mercy</u>; and
>
> WHEREAS, Mercy and [HealthSource] agree that <u>it is in the best interests of quality patient care and for efficient and effective delivery of health care at Mercy that this Agreement be entered into by the parties</u>.
>
> NOW, THEREFORE, in consideration of the agreements contained herein, the parties agree as follows:

*Doc#:32-2, Professional Services Agreement, PageID#:644* (emphasis added). Healthsource was actually barred from receiving any benefit for its patients at Mercy's hospital: "Corporation shall not use, or knowingly permit any other person who is under its direction to use, any part of Mercy's premises for any purpose other than the performance of Services for Mercy and its patients pursuant to this Agreement." *Doc#:32-2, Professional Services Agreement, PageID#:648*. Mercy and HealthSource were dealing at arm's length as "independent contractors," not as partners in the care of grant-supported patients. *Id., PageID#:649*.

The United States has filed a declaration trying to fill these considerable gaps, but nothing in the agreement between the entities required HealthSource physicians to cover call in exchange for the privilege to admit HealthSource patients into Mercy's hospital.

Flowers & Grube
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

*See Doc#:34-1, Declaration of Kimberly Patton filed May 20, 2022, PageID#:732-33*. Nor does Dr. Thress' agreement with HealthSource specifically reference any on-call duties at Mercy as HealthSource CEO Kimberly Patton has asserted. *Compare Id. with Doc#:32-5, Employment Agreement August 1, 2015 through June 30, 2017 for Dr. Timothy Thress, PageID#:690-705*. This declaration alone cannot contradict the undisputed text of the governing agreements to confer federal jurisdiction that is otherwise lacking. In this way, the United States has failed to meet its burden to establish by a preponderance of the evidence that federal subject matter jurisdiction exists.

On the current evidentiary record, this dispute stands for the proposition that a federally funded clinic cannot federalize a medical malpractice suit against one of its independent-contractor clients simply by reference to vague agreements and rules requiring call coverage that explicitly do nothing for the patients to whom Congress sought to offer aid. FTCA coverage for tort liability under FSHCAA should not be treated as a cloak that an individual physician may wear to any hospital that he has been lent out to for profit. The federal dime is worth more than that, and this Court should reject the attempt to stretch FSHCAA beyond its breaking point.

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

## **CONCLUSION**

For the foregoing reasons, this Court lacks subject matter jurisdiction over this dispute, and the matter should be remanded to the Hamilton County Court of Common Pleas.

Respectfully Submitted,

*/s/ Myles J. Poster*
Myles J. Poster, Esq. (PHV001)
**WAIS, VOGELSTEIN, FORMAN, KOCH & NORMAN, LLC**
1829 Reisterstown Road, Suite 425
Baltimore, Maryland 21208
(410) 998-3600
myles@malpracticeteam.com

*/s/ Daniel N. Moore*
Daniel N. Moore, Esq. (#0076430)
Donald C. Moore, Jr., Esq. (#0003945)
Kelly W. Thye, Esq. (#0073630)
**THE MOORE LAW FIRM**
1060 Nimitzview Drive, Suite 200
Cincinnati, Ohio 45230
(513) 232-2000
danmoore@moorelaw.com
dmoore@moorelaw.com
kthye@moorelaw.com

*/s/ Paul W. Flowers*
Paul W. Flowers, Esq. (#0046625)
Louis E. Grube, Esq. (#0091337)
Melissa A. Ghrist, Esq. (#0096882)
**FLOWERS & GRUBE**
Terminal Tower, 40th Floor
50 Public Square
Cleveland, Ohio 44113
(216) 344-9393
pwf@pwfco.com
leg@pwfco.com
mag@pwfco.com

*Attorneys for Plaintiffs,
N.B. a Minor, by her Parents, Natural Guardians, and Next Friends Dwan Bray and Aaron Bray*

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

12

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2022, the foregoing **Reply** was filed electronically. Notice of this filing will be sent to all parties by operation of the court's electronic filing system. *Loc. R. 5.2(b).* Parties may access this filing through the court's system.

*/s/ Paul W. Flowers*
Paul W. Flowers, Esq. (#0046625)
**FLOWERS & GRUBE**

*Attorney for Plaintiffs,*
*N.B. a Minor, by her Parents, Natural Guardians, and Next Friends Dwan Bray and Aaron Bray*

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395