IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | |
|---|---|
| N.B., A MINOR, BY HER PARENTS, NATURAL GUARDIANS, AND NEXT FRIENDS DWAN BRAY AND AARON BRAY, | Case No. 1:20-cv-699<br><br>Judge Matthew W. McFarland |
| Plaintiffs, | |
| v. | |
| BON SECOURS MERCY HEALTH, INC., *et al.*, | |
| Defendants. | |

## ORDER AND OPINION

This case is before the Court on the Motion to Remand (Doc. 20) filed by Plaintiffs N.B., a Minor, by her Parents, Natural Guardians, and Next Friends, Dwan Bray and Aaron Bray and the Court's previous stay of briefing on Defendant United States of America's Motion to Dismiss for Lack of Jurisdiction (Doc. 21). The Motion to Remand is fully briefed and ripe for the Court's review. For the reasons below, the Court **DENIES** the Motion to Remand. Additionally, the Court **LIFTS** the stay on the United States' Motion to Dismiss.

## BACKGROUND

### I. Factual Allegations

From April through November 2015, Ms. Bray received medical treatment from Defendants related to her pregnancy with N.B. (Amended Complaint, Doc. 13, ¶¶ 21-55.)

Due to Defendants alleged medical negligence, N.B. now suffers "permanent injuries and damages" resulting from "the sequela of hypoxic-ischemic encephalopathy." (*Id.* at ¶ 55.) Plaintiffs bring this action against Defendants—various health-providing entities and persons—alleging medical negligence and loss of filial consortium. (*Id.* at ¶¶ 56-116.)

Relevant to this Order is the care provided by Dr. Timothy Thress. On November 11, 2015, Ms. Bray began experiencing symptoms consistent with preeclampsia. (Am. Compl., Doc. 13, ¶ 35.) So, Ms. Bray presented at Mercy Health – Anderson Hospital ("Mercy"). (*Id.* at ¶ 36.) There, she was evaluated by Dr. Thress, an on-call physician. (*Id.*) Plaintiffs allege that, though Ms. Bray had symptoms "consistent with preeclampsia or gestational hypertension," Dr. Thress failed to make any diagnosis. (*Id.* at ¶¶ 41-42.) At the time of the alleged incident, Dr. Thress was employed as an Obstetrician/Gynecologist ("OB/GYN") physician by HealthSource of Ohio, Inc. ("HealthSource"), a health center based in Milford, Ohio. (Employment Agreement, Doc. 32-5, Pg. ID 690-715; Professional Services Agreement, Doc. 32-2, Pg. ID 381.)

### a. The Relationship between Dr. Thress and HealthSource

Dr. Thress was employed by Healthsource from 2013 to 2018. (Employment Agreement, Doc. 32-6, Pg. ID 693; Kimberly Patton Deposition, Doc. 34-1, Pg. ID 732.) As a condition of his employment with HealthSource, Dr. Thress was required to "obtain and maintain hospital privileges as a part of [his] practice" and "participate in hospital and/or emergency room on-call rotations for hospital care and/or emergency coverage furnished to HealthSource and non-HealthSource patients in accordance with all requirements of applicable on-call agreements executed by HealthSource with hospitals."

2

(Employment Agreement, Doc. 32-6, Pg. ID 695.) The Employment Agreement further stated that Dr. Thress would "deliver hospital-based in-patient and emergency room services to non-HealthSource patients when," as relevant here, (1) "the services [were] required by any hospital as a requirement for medical staff membership, credentials and privileges" or (2) "the services [were] required as a result of [the employee-physician] providing on-call coverage or cross coverage for a provider with whom HealthSource has a written agreement." (*Id.*)

### b. The Relationship between Dr. Thress, HealthSource, and Mercy

In 2013, HealthSource entered into a Professional Services Agreement with Mercy. (Professional Services Agreement, Doc. 20-2, Pg. ID 347.) Through the Professional Services Agreement, HealthSource provided overnight and weekend OB/GYN on-call services to Mercy, as Mercy lacked "an OB/GYN residency program to cover the hospital." (*Id.*; Patton Dep., Doc. 32-1, Pg. ID 624-25.)

The relationship between HealthSource and Mercy was that of an employer-independent contractor, as identified in the Professional Services Agreement. (Professional Services Agreement, Doc. 20-2, Pg. ID 352.) The employer-independent contractor relationship between HealthSource and Mercy is further evidenced by the payment scheme between the two. Under the Professional Services Agreement, Mercy paid a flat rate to HealthSource for its physicians' time. (*Id.* at Pg. ID 350.) HealthSource, in turn, retained 20% of the payment and issued 80% to its physicians as compensation. (Patton Dep., Doc. 32-1, Pg. ID 628.)

Dr. Thress began providing evening and weekend on-call OB/GYN services to

3

Mercy in 2013. (Physician Certificate, Doc. 32-7, Pg. ID 717.) Dr. Thress obtained and maintained hospital privileges at Mercy through the Professional Services Agreement. (Professional Services Agreement, Doc. 20-2, Pg ID 381.). At that time, Mercy required members of its medical staff to provide in-hospital and/or emergency room on-call rotations as a condition of obtaining hospital privileges. (Mercy Health Medical Staff Rules and Regulations, Doc. 35-2, Pg. ID 794.)

### c. HealthSource's 2015 Grant Application

In 2015, HealthSource applied for and was deemed an employee of the Public Health Service ("PHS") under the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233. (*See* Patton Dep., Doc. 32-1, Pg. ID 606.) To be deemed an employee of PHS, health centers are required to submit a yearly application for federal grant funds. (*Id.* at Pg. ID 608.) The application informs the United States Department of Health and Human Services ("HHS") of "how the proceeds from any grant [would] be used to provide care and treatment to the underserved, uninsured, or those in need in the medical community." (*Id.* at Pg. ID 616.) In its Grant Application, HealthSource lists OB/GYN as a "Staffing Position[] for Major Service Category." (Grant Application, Doc. 24-1, Pg. ID 458.) Additionally, gynecological, obstetrical, and prenatal care are all included as services provided by HealthSource. (*Id.* at Pg. ID 461.)

Mercy is not identified or cited by name in the Grant Application. (*See* Grant Application, Doc. 24-1, Pg. ID 462-71.) Kimberly Patton, the President and CEO of HealthSource, explained that Mercy is not listed as an "in scope" service site on the Grant Application because hospitals are, by definition, not "operational sites" for qualified

4

health centers. (*Id.*, Patton Dep., Doc. 32-1, Pg. ID 617, 620.) Instead, "medical rounds" are listed in the "Other Activities/Location" section of the Grant Application—wherein "[p]hysicians complete rounds at the hospital checking on patients." (Grant Application, Doc. 24-1, Pg. ID 471.)

Pursuant to the Grant Application, HealthSource's OB/GYNs were paid an average annual salary of $200,00.00 in 2015. (Grant Application, Doc. 24-1, Pg. ID 458.) The Grant Application notes that physicians in the area "were being offered salary guarantee[s] considerably above market rate," which "greatly impacted HealthSource's ability to recruit, and in some instances, retain" physicians. (*Id.* at Pg. ID 473.) Pursuant to the FSHCAA grant requirements, "[f]ederal grant funds may not be used to pay the salary of an individual in a rate in excess of federal executive pay scale currently $180,500[.00]." (Patton Dep., Doc. 32-1, Pg. ID 613.) So, to retain its physicians, HealthSource used federal grant funds to cover its physicians' salaries "up to the federal limit," then used "other revenues within HealthSource" to ensure that its physicians' salaries were "at market rate." (*Id.* at Pg. ID 614-15.) Such payment schemes, according to Patton, are appropriate under the FSHCAA. (*Id.*) For Dr. Thress specifically, HealthSource paid him a salary of $300,188.10 for the 2015 fiscal year. (Diana Miller Deposition, Doc. 32-2, Pg. ID 678.)

The Grant Application was approved by HHS and HealthSource was deemed a federal employee of PHS throughout 2015. (*See* Patton Dep., Doc. 32-1, Pg. ID 606.)

## II. Procedural History

Plaintiffs first brought this action in Hamilton County Court of Common Pleas on

5

April 30, 2020. (Doc. 1-3.) On September 9, 2020, Defendant Dr. Thress removed the action to this Court. (Doc. 1.) That same day, the United States filed a Notice of Substitution, substituting the United States for Dr. Thress as Defendant pursuant to 42 U.S.C. § 233(a). (Doc. 2.) The United States' notice stated that, during the time of the alleged incident, Dr. Thress was an employee of HealthSource. (*Id.* at Pg. ID 127.) HealthSource, at that time, was deemed to be an employee of PHS. (*Id.*) Accordingly, the United States contends, through a certification of the Attorney General, that (1) both Dr. Thress and HealthSource were acting within the scope of their employment with PHS at the time of the alleged incident and, consequently, (2) the action is a tort action brought against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, and the FSHCAA. (*Id.* at Pg. ID 128; *see also* Doc. 1-4).

In response, Plaintiffs filed the pending Motion to Remand (Doc. 20). Meanwhile, the United States moved to dismiss the claims made against it, and those related to Dr. Thress' care, for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. 21.) The Court stayed briefing on the Motion to Dismiss until the Motion to Remand was adjudicated. (11/4/2020 Notation Order.)

## LAW

On a motion for remand, the question is whether the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The party removing the action to federal court bears the burden of showing that the district court has original jurisdiction over the action. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000). Courts construe the removal statute strictly in favor of state court jurisdiction, *Shamrock Oil & Gas Corp. v.*

6

*Sheets*, 313 U.S. 100, 109 (1941), and resolve doubts in favor of remand. *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999).

The United States contends that the Attorney General's certification conclusively establishes that Dr. Thress was acting as a federal employee for purposes of removal and that the Court's inquiry should end there. (Response in Opposition to Motion for Remand, Doc. 24, Pg. ID 451; Supplemental Memorandum, Doc. 34, Pg. ID 723.) However, as this Court previously acknowledged in the Order Granting Leave to Conduct Discovery, the FSHCAA requires a fact-specific inquiry into Dr. Thress' actions and circumstances to determine whether remand is appropriate. (Order Granting Motion for Leave to Conduct Discovery, Doc. 26, Pg. ID 518-19.) Such inquiry is addressed below.

## ANALYSIS

The FTCA protects PHS officers and employees from personal liability for negligent acts and omissions within the scope of their employment, providing that the United States may assume such liability. 42 U.S.C. § 233, 28 U.S.C. §§ 1346(b), 2671-80. This coverage has been extended to community health centers that receive federal funds pursuant to the FSHCAA. 42 U.S.C. § 233. Such health centers and their employees are covered by the FSHCAA if HHS deems the center to be an employee of PHS and the relevant acts or omissions of the health center and its employees:

(1) are within the scope of employment, on behalf of the covered entity;

(2) relate to grant-supported activities; and

(3) are applied to the appropriate individuals.

42 U.S.C. § 233(g)(1)(A); 42 C.F.R. § 6.6(c)-(d).

7

The parties agree that HealthSource is a PHS employee and is therefore a covered entity. (Supplemental Memorandum, Doc. 32, Pg ID 585; Supplemental Memorandum, Doc. 34, Pg. ID 721.) Plaintiffs instead argue that removal was improper because Dr. Thress was not acting as a federal employee when providing services to Ms. Bray. (Motion to Remand, Doc. 20; Supplemental Memoranda, Doc. 32.) Specifically, Plaintiffs contend that the United States failed to carry its burden of showing that removal was proper because Dr. Thress was allegedly not providing services (1) within his scope of employment with HealthSource, (2) that related to grant-supported activities, or (3) to the appropriate individual. (*Id.*) The Court disagrees.

### I. Dr. Thress' Actions Were Within the Scope of his Employment with HealthSource.

Pursuant to 42 C.F.R. § 6.6(c), "only acts and omissions within the scope of [] employment are covered" by the FSHCAA. "If a covered individual is providing services which are not on behalf of the covered entity, such as . . . on behalf of a third-party[,]" then the "acts and omission which are related to such services are not covered." 42 C.F.R. § 6.6(c).

Whether an employee's actions are within the scope of his employment for purposes of the FSHCAA is an issue governed by the law of the state where the incident occurred. *See Davey v. St. John Health*, 297 Fed. Appx. 466, 470 (6th Cir. 2008). Plaintiffs argue that the analysis to determine whether Dr. Thress' actions were within his scope of employment is whether the activities were within "the scope of the grant awarded to [] HealthSource." (Reply in Support, Doc. 36, Pg. ID 819.) However, when analyzing the

8

scope of employment requirement pursuant to 42 C.F.R. § 6.6(b), the Sixth Circuit has clearly applied a state's scope-of-employment analysis. *Davey*, 297 Fed. Appx. at 470. Thus, the Court must apply state law principles to determine whether Dr. Thress' actions fall within the scope of his employment with HealthSource as required by the FSHCAA.

Because the incident occurred in Ohio, Ohio law governs. Under Ohio law, an employee's conduct is within the scope of his employment if the conduct (1) is of the kind which he is employed to perform; (2) occurs substantially within the authorized limits of time and space; and (3) is actuated, at least in part, by a purpose to serve the employer. *Martinek v. United States*, 254 F. Supp. 2d 777, 783 (S.D. Ohio 2003) (citing *Anderson v. Toeppe*, 688 N.E.2d 538, 543 (Ohio Ct. App. 1996)). "[I]n determining whether an employee acted within the scope of his employment, the court must not focus on the alleged wrongful nature of the employee's actions; 'rather, the issue is the actions complained of and whether those actions are so divergent that [their] very character severs the relationship of employer and employee.'" *Id.* (quoting *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1144 (6th Cir. 1996)).

*Coalts-Young v. Glens Falls Hospital* is analogous to the case at hand. No. 1:14-cv-271 (GLS/CFH), 2014 WL 6474855 (N.D.N.Y. Nov. 16, 2014). In *Coalts-Young*, the physician-defendant allegedly engaged in medical malpractice while working a shift on the Maternity Floor of a hospital. *Id.* at *7-13. At the time of the alleged incident, the physician was an employee of a federally funded health center pursuant to the FSHCAA. *Id.* at *4. As a part of the physician's employment with the health center—and pursuant to the contractual relationship between the health center and the hospital—the physician

9

was required to provide after-hour coverage to the hospital. *Id.* at \*7-8. For such work, the physician was compensated directly by the health center. *Id.* at \*12. The plaintiff in *Coalts-Young* argued that the physician was not acting within the scope of her employment with the health center, but was rather a "special employee" of the hospital. *Id.* at \*8. The court disagreed, holding that evidence of a contractual relationship between the physician and the health center, coupled with the payment scheme paid out directly by the health center, was sufficient to demonstrate that the physician was acting within the scope of her employment with the federally funded health center. *Id.* at \*9-13.

Here, there is no question that Dr. Thress was acting within the scope of his employment with HealthSource when providing services to Ms. Bray. As a condition of Dr. Thress' employment with HealthSource—and pursuant to the contractual relationship between HealthSource and Mercy—Dr. Thress provided occasional OB/GYN on-call services to Mercy. (Professional Services Agreement, Doc. 20-2, Pg. ID 347, 381.) The relevant acts giving rise to the Complaint are the OB/GYN services that Dr. Thress provided to Ms. Bray. (Am. Compl., Doc. 1, ¶36.) The alleged incident occurred at Mercy, during one of Dr. Thress' required on-call shifts. (*Id.*; Mercy Health Medical Staff Rules and Regulations, Doc. 35-2, Pg. ID 794.) Such acts were performed on behalf of HealthSource, as evidenced by HealthSource's direct compensation to Dr. Thress for such services. (*See* Patton Dep., Doc. 32-1, Pg. ID 628.) Thus, the evidence sufficiently demonstrates that the services Dr. Thress provided to Ms. Bray were within the scope of Dr. Thress' employment with HealthSource.

**II.     Dr. Thress' Actions Relate to Grant-Supported Activities.**

Pursuant to 42 C.F.R. § 6.6(d), "[o]nly acts and omissions related to the grant-supported activity of entities are covered" by the FSHCAA. Courts analyzing whether acts relate to grant-supported activities compare the activities and services listed on the grant application with those actually performed by the physician in question. *See, e.g., Smith v. Harbison*, No. 4:19-cv-152 (CDL), 2020 WL 6216758 (M.D. Ga. Oct. 22, 2020). An omission of a hospital name in the "Covered Locations" section of a grant application is not dispositive to such analysis. *Id.* at *3.

Here, while the Grant Application does not specifically list Mercy as a "covered location," it nonetheless indicates to HHS that HealthSource intended to provide OB/GYN services to hospitals in the area. The application lists OB/GYN in its "Staffing Profile" section, as well as gynecological, obstetrical, and prenatal care in its "Required Services" section. (Grant Application, Doc. 24-1, Pg. ID 458.) Furthermore, the application specifically identifies that "[p]hysicians complete rounds at the hospital checking on patients" at various hospital locations. (*Id.* at Pg. ID 461.) Dr. Thress provided OB/GYN services to Ms. Bray while working a required on-call shift at Mercy. (Am. Compl., Doc 1, ¶ 36.) Therefore, Dr. Thress' conduct related to the services listed in the Grant Application.

Plaintiffs make two arguments to convince the Court that Dr. Thress' conduct did not relate to grant-supported activities. First, Plaintiffs argue that, because the words "house officer" do not appear in the Grant Application, Dr. Thress' services at Mercy were not related to grant-supported activity. (Supplemental Memorandum, Doc. 32, Pg. ID 590-91.) The Court is unpersuaded by this argument. The Grant Application indicates

11

that HealthSource intended to serve hospital OB/GYN patients during medical rounds. (Grant Application, Doc. 24-1, Pg. ID 458, 461.) Such services—OB/GYN on-call services at a local hospital—are precisely what Dr. Thress was providing to Ms. Bray. (Am. Compl., Doc 1, ¶ 36.)

Next, Plaintiffs attempt to argue that Dr. Thress' salary shows that his activities were not related to grant-supported activities, as some of his salary was not sourced directly from the grant. (Supplemental Memoranda, Doc. 32, Pg. ID 592.) Again, the Court is unpersuaded. As an initial matter, Plaintiffs fail to cite to any caselaw to support this contention. And, while it may be true that federal grant funds can only be used to pay for physicians' salaries to a certain amount, HHS has directly approved HealthSource's allocation of an amount greater than $180,500.00—sourced from the grant and other revenue sources— to compensate its OB/GYN physicians. (*See* Grant Application, Doc. 24-1, Pg. ID 458.) Such a payment scheme ensures that FSHCAA-covered entities can adequately pay their physicians, which in turn ensures that quality physicians are retained to provide quality healthcare to the underserved. Moreover, the question is not whether the act itself is grant-supported, but rather whether the act "*relates* to grant-supported activities." 42 C.F.R. § 6.6(d) (emphasis added). Thus, the fact that some portion of Dr. Thress' total income was sourced from non-grant funding does not negate the conclusion that the acts he engaged in relate to grant-supported activities.

The evidence, therefore, sufficiently demonstrates that Dr. Thress' relevant conduct related to grant-supported activities as required by the FSHCAA.

III.     **Dr. Thress' Actions Were Applied to the Appropriate Individual.**

Coverage under the FSHCAA applies to services provided to all patients of the health center and, in limited circumstances, to individuals who are not patients of the health center. 42 U.S.C. § 233(g)(1)(B). Services provided to individuals who are not patients of the health center will be covered only if HHS determines that service to such individual:

> (1) benefits patients of the entity and general populations that could be served by the entity through community-wide intervention efforts within the communities served by such entity;
>
> (2) facilitates the provision of services to patients of the entity; or
>
> (3) are otherwise required to be provided to such individuals under an employment contract or similar arrangement between the entity and the covered individual.

42 U.S.C. § 233(g)(1)(C)(i)-(iii); 42 C.F.R. § 6.6(d)(1)-(3).

42 C.F.R. § 6.6(e) provides "examples of situations within the scope of [42 U.S.C. § 233(g) and 42 C.F.R. § 6.6(d)]." Relevant here, is the "Hospital-Related Activities" example, wherein:

> [P]eriodic hospital call or hospital emergency room coverage is required by the hospital as a condition for obtaining hospital admitting privileges. There must also be documentation for the particular health care provider that this coverage is a condition of employment at the health center.

42 C.F.R. § 6.6(e)(4)(ii). "If any element of the activity or arrangement in question does not fit squarely into [this] example[]," then the covered entity is "expected to apply for particularized determination[]" from HSS to decide whether such activity by the health center is entitled to FSCHAA coverage. 42 C.F.R. § 6.6(e)(4); *see also Metcalf v. W. Suburban Hosp.*, 912 F. Supp. 382, 387 (N.D. Ill. 1996).

The record shows that the services Dr. Thress provided to Ms. Bray meet the "Hospital-Related Activities" example, which is within the scope of 42 U.S.C. § 233(g) and 42 C.F.R. § 6.6(d). As a condition of obtaining hospital admitting privileges from Mercy, Dr. Thress is required to provide periodic, on-call coverage to Mercy. (Mercy Health Medical Staff Rules and Regulations, Doc. 35-2, Pg. ID 794.) Through the Professional Services Agreement, HealthSource provided OB/GYN physicians—including Dr. Thress—to Mercy for evening and weekend on-call services. (Professional Services Agreement, Doc. 20-2, Pg ID 381.) Such coverage by Dr. Thress is required by the Employment Agreement between Dr. Thress and HealthSource. (Employment Agreement, Doc. 32-6, Pg. ID 695.) Thus, Dr. Thress provided services that "fit squarely" into the "Hospital-Related Activities" example which, in turn, meets the service requirements under 42 U.S.C. § 233(g) and 42 C.F.R. § 6.6(d). *See Harbison*, 2020 WL 6216758, at *11-15; *Coalts-Young*, 2014 WL 6474855, at *7-8. Dr. Thress, therefore, provided services to the proper individual as required by the FSHCAA.

## CONCLUSION

Removal was proper in this case, as Dr. Thress' actions were covered under the FSHCAA. Thus, the Court **ORDERS** the following:

(1) Plaintiffs' Motion to Remand (Doc. 7) is **DENIED**;

(2) The stay on the United States of America's Motion to Dismiss (Doc. 21) is **LIFTED**; and

(3) Plaintiff **SHALL FILE** a response in opposition to the Motion to Dismiss (Doc. 21) within 21 days of this Order.

15

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND